PETER C. BECK, Plaintiff, *v.* BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Defendants.

Supreme Court, Special Term, Kings County, July 5, 1944.

*Theodore F. Kuper* for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel (Nicholas Bucci* of counsel), for defendants.

*Matthew Silverman* for State, County and Municipal Workers of America, C. I. O., *amicus curiæ.*

FROESSEL, J. For a great many years, the Board of Education of the City of New York has maintained a system of indirect employment with regard to the custodial and janitorial staff in almost all its public school and other buildings. Under this system, it presently employs for each building a custodian or custodian engineer, appointed in accordance with the Education Law and the Civil Service Law of this State, and permits such employee in turn personally to hire and discharge at will all the matrons, firemen and other custodial and janitorial help required to operate and maintain said building. About three thousand men and women are so employed in approximately 765 buildings and none of such persons is appointed from civil service eligible lists. The Board of Education has no control as to their selection, employment or discharge, and presently expends a total of upwards of $5,200,000 annually as compensation for custodial or janitorial work in said buildings. These moneys are paid to the custodians or custodian engineers in lump sums from which the latter pays the three thousand employees, retaining the balance in each case as his own profit and compensation, although a base salary is fixed which is less than the gross schedule compensation solely for the purposes of computing pension and retirement contributions of said custodians or custodian engineers.

For the first time this practice is directly challenged in our courts as in violation of section 6 of article V of our State Constitution which, so far as applicable, provides as follows: " Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive; * * *."

The challenge is offered by plaintiff in a taxpayer's action to enjoin the Board of Education of the City of New York (hereinafter referred to as the " Board "), from continuing

its so-called " indirect " custodial system of operating its school buildings. On the present application, plaintiff moves for judgment on the pleadings. (Civ. Prac. Act, § 476; Rules Civ. Prac., rule 112.) An examination of the pleadings and the briefs submitted by the respective parties shows clearly that no issues of fact are present in this case. The essential facts are admitted; certain inferences and conclusions drawn therefrom by the plaintiff in his complaint are denied. The issue thus squarely presented is one of law, namely: does the " indirect " custodial system employed by the Board meet the constitutional test as embodied in the constitutional provision hereinbefore referred to?

Upon mature reflection, I can find no escape from the conclusion that the system attacked clearly violates the said mandate of our Constitution, and deprives the aforesaid approximately three thousand employees of tenure, pension and retirement rights. Discussion is unnecessary to demonstrate that there is nothing unique or peculiar about the duties they perform; that they are quite similar to duties performed in courthouses and other public buildings by men and women within the merit system of civil service; and that if custodians and custodian engineers may be chosen according to merit and fitness, their assistants, such as firemen, cleaners, matrons and elevator operators, may be chosen by the same process.

In *Palmer* v. *Board of Education* (276 N. Y. 222) plaintiff, a carpenter, who had at no time taken any examination, either competitive or qualifying, to show his fitness for appointment, was discharged by the defendant named therein. The court held that plaintiff possessed no legal right which was violated by a discharge. In the course of its opinion, the court, by LEHMAN, J., said: " By placing this provision in the Constitution the People of the State have declared in unmistakable terms that merit, ascertained as therein provided, shall govern appointments and promotions in the public service, and have thus formulated and announced the public policy of the State. No administrative officer may violate the provisions of the Constitution, and no court may sanction a violation. Administrative officers may at times through inadvertence disregard a mandate of a statute or even of the Constitution. When redress is sought in the courts for an alleged wrongful discharge or removal of an employee of the State or one of its civil divisions, the court, too, may fail to note that the employment was illegal from its inception, unless the legality of the employment is

challenged by the defendant. An employment which in its inception violates the provisions of the Constitution is illegal and against public policy, regardless of the good faith of the parties. It is the duty of the appropriate administrative officers of the State or its civil divisions to discontinue an illegal employment when they note its illegality, and if rights based upon such employment are asserted in the courts, the legality of the appointment should not go unchallenged by public officers; but regardless of whether the legality is challenged or not, a court must refuse to sanction such an employment which violates the mandate of the Constitution whenever the illegality becomes apparent to it."

And continuing at page 228: " Since a rural school district is a local civil division of the State in which the State through local agencies provides for the education of its inhabitants, appointments in its civil service *must* be made according to ' merit and fitness.' The Legislature could not change that, and since it does not appear that merit and fitness could not be ascertained by examination, it follows that it was the duty of the Legislature or the Civil Service Commission to provide for such examination. Failure of the Legislature and the Civil Service Commission to make such provision might render compliance with the constitutional mandate difficult; such failure could not render lawful a contract of employment which violates that mandate."

A similar situation was presented in *Matter of Scahill* v. *Drzewucki* (269 N. Y. 343) which related to the employment by a local board of education of a school mechanic and his helper. In the course of its opinion, the court stated: " It seems to be conceded and, in any event, there can be no doubt, that the two positions were and still are within the competitive class of the classified civil service, and, therefore, subject to the applicable provisions of the Civil Service Law * * *." The court held " that the positions were clearly of a kind where merit and fitness were capable of ascertainment by examination."

In *Matter of Andresen* v. *Rice* (277 N. Y. 271) the relationship of the State Police, a quasi-military organization functioning under the State executive, was under consideration. It was held that article 9-A of the Executive Law providing for their organization, insofar as it places the whole State Police force in the noncompetitive or unclassified service, exempting them from all competitive examinations and leaving their selection to the Superintendent of Police according to such rules and regulations as he may adopt, is violative of section 6 of

article V of the State Constitution and void in the absence of anything to show that competitive examinations are impractical.

In *Matter of Turel* v. *Delaney* (285 N. Y. 16) the Board of Transportation of the City of New York retained a physician and surgeon to supply the medical and surgical care and treatment which the Workmen's Compensation Law required the Board to provide for workmen employed by it in its operation of the city-owned rapid transit railroads and, in that connection, authorized the employment of assistant doctors, surgeons and nurses subject to approval by the Board. The courts below held the contract valid and the Court of Appeals reversed their determination saying, among other things: " A contradictory result is dictated by the State Constitution through its command that merit and fitness shall be the basis of the choice of public servants and that the test of such merit and fitness shall be competitive examinations where competitive examinations are practicable (N. Y. Const. art. 5, § 6.) "

In reaching the conclusion that the so-called " indirect " system is inhibited by the mandate of the State Constitution, I have not overlooked the fact that a given position may be exempted from competitive examination where the determination is based upon reasonable grounds. But, as was said in *Matter of Ottinger* v. *Civil Service Comm.* (240 N. Y. 435, 443) where the employees of a whole bureau or department were by legislative act declared exempt as a whole: " No such sweeping exemption within the limits of the administrative departments of the government has even been proclaimed since the Constitution set bounds to the discretion of the Legislature in the formation of the civil service." If the Legislature has no power to enact legislation making a sweeping exemption from civil service of a bureau in its entirety, how much less power have administrative officials operating a school system?

It is no answer to say that the practice challenged has existed since the inception of the public school system in the city of New York which may date back to the time of the little red school house. The Supreme Court of the United States has not hesitated to overrule *Haddock* v. *Haddock* (201 U. S. 562) thirty-five years later in *Williams* v. *North Carolina* (317 U. S. 287). Nor did the same court hesitate to overrule *The Collector* v. *Day* (11 Wall. 113) seventy-three years later in *Graves* v. *N. Y. ex rel. O'Keefe* (306 U. S. 466, 486). While our courts have never directly passed upon the question involved here, decisions may be found which seem to have some bearing upon the question presented here, such as *Lorenz* v. *Board of Education* (264

N. Y. 591) where the Court of Appeals sustained an award of damages for breach of contract of employment which violated the constitutional mandate here invoked. But as was observed by that very court in *Palmer* v. *Board of Education* (276 N. Y. 222, 229, *supra*) the violation was overlooked " because the question was not raised ".

In the light of the foregoing, I am constrained to grant judgment in favor of the plaintiff, restraining the defendants from continuing the present indirect system of employment of persons in the custodial and janitorial service, but will make no direction to the Board as to the manner in which it shall comply with our Constitution and the laws of this State. I am satisfied that the Board has been acting in good faith in this situation; that it recognizes the necessity of bringing these employees within the ranks of the civil service system; and in that connection has been making studies for some time. While the solution of this problem may not be put off indefinitely, the Board should have every reasonable opportunity to prepare for the necessary changeover, which involves added difficulties by reason of the war, the accompanying manpower shortage and kindred situations. Moreover, legislation may be necessary. With this in mind, I shall stay the execution of the judgment to be entered hereon, for a period of sixty days after any appeal from such judgment has finally determined the legal question presented here, or after the time to appeal has expired, after which period, should further time be necessary, application may be made to Special Term for such relief.

Settle judgment on notice.