PETER C. BECK, Respondent, v. BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Appellants.

Second Department, January 22, 1945.

*Ignatius M. Wilkinson, Corporation Counsel (W. Bernard Richland* and *Pauline K. Berger* of counsel), for appellants.

*Theodore Fred Kuper* for respondent.

CARSWELL, J.  Plaintiff brought this action to enjoin defendant Board of Education, hereinafter called the "Board," from continuing the indirect custodial system under which certain public school buildings are maintained and cleaned.  The com-

plaint alleges that this indirect system violates article V, section 6 of the State Constitution. In their answer defendants admit the essential allegations of the complaint and, in a separate defense, allege that to maintain and clean the school buildings they use three different systems, an "indirect system," a "direct system," and a combination or "modified indirect system"; that none of the three systems is entirely satisfactory and that they are trying to work out satisfactory systems for varying particular situations; that they should not be hampered by extra-legal directions in their endeavor to achieve their administrative objectives of efficient and economical performance of duty. Defendants also allege that the indirect system does not violate any statute nor the specified constitutional provision.

The judgment herein directs defendants to abolish the present indirect system and to employ helpers, in accordance with the Constitution and the Civil Service Law, to do the work now done by all persons in the custodial service under the indirect system. It also directs the repeal of all existing schedules providing for bulk payments to custodians and directs the filing in place thereof of new salary schedules as required by law.

The essential facts are undisputed. Defendant Board has the care and control of about 765 public school and other buildings. In three of them it utilizes the direct system of employment of individuals appointed from civil service lists to maintain and clean the schools. The other school buildings are maintained and cleaned through the indirect system. Under such system a custodian engineer is appointed from a civil service list for each school. He is paid a lump sum of money, computed in accordance with a salary schedule based upon a survey of each school property. This schedule concerns itself with floor area and different types of paved area in the school unit. The custodian has the exclusive right to employ and discharge cleaners and helpers who aid him in his work. He pays them from the lump sum payments he receives. The Board has no control over these helpers or of their compensation. The undisbursed money is retained by the custodian. The Board, for pension and retirement fund purposes, fixes a basic salary for the custodian and the undisbursed moneys in the lump sum payment in excess of that amount so fixed are his own but are not deemed compensation for pension or retirement fund purposes. The custodian engineer necessarily purchases such minor supplies as are needed to do the cleaning. He procures and pays for workmen's compensation coverage of the individuals he

employs to aid him. The number of these employees of the several custodians is about three thousand and the indirect system involves an expenditure of over five million dollars a year. This indirect system has been used since the inception of the New York City public school system — the greater part of a century.

No claim is made that this indirect custodial system is illegal for any reason other than the asserted violation of the constitutional provision. No facts are alleged to show that it is illegal because of a failure to comply with statutory provisions regulating the awarding of contracts for personal service in the carrying on of governmental functions. Section 343 of the Charter of the City of New York bans the making of contracts for services, or for the purchase of materials or supplies in excess of one thousand dollars, without public bidding. The chapter in which that section is found is expressly made inapplicable to the Board of Education under section 349 of the Charter, at least insofar as purchases are concerned. Whether the exclusion is broader need not be determined. Subdivision 8 of section 875 of the Education Law provides that the Board may not make purchases of supplies in excess of one thousand dollars without public bidding. It does not ban expenditures of sums in excess of that amount for " work or labor to be done," as does the wholly or partly inapplicable section 343 of the City Charter. If subdivision 8 of section 875 is the sole controlling statute, it permits the Board to contract for " work or labor " in excess of one thousand dollars without public bidding. But under the pleadings this question is not presently pertinent. It is noted for the purpose of narrowing the scope of the inquiry herein.

The Board's predecessors were originally given power to hold the property used for public education and also " to contract with and employ teachers in said schools, *and make .other contracts* for conducting and managing their schools; * * *." (Emphasis supplied.) (L. 1851, ch. 386, §§ 2, 10.) This grant of authority was continued in succeeding statutes in different language and the Board and its employees were specifically directed to attend to the " cleanliness, safety, warming, ventilation and comfort of the school premises, * * *." (L. 1864, ch. 351, § 14.) The Board's powers were continued in section 1055 of the Greater New York Charter, and in subdivision 3 of section 868 of the Education Law. The latter provides that the care and custody of the school property shall be vested in the Board, and

subdivision 8 of section 875 of the Education Law restricts the Board in the purchase of supplies only, as above indicated. It does not restrict the making of contracts, without public bidding, for work or labor in excess of one thousand dollars.

The foregoing statutes disclose that the Board has been given complete and adequate power for the care and management of school buildings by recourse to any method or system it chooses to adopt, subject, of course, to the Constitution and the Civil Service Law insofar as they are applicable. Apart from the latter, the Board may procure the performance of work in the care of such buildings by directly employed individuals or it may have the same services performed by contracting for the furnishing of them in bulk, or by a combination of these methods. The choice of the system under which they are to be cleaned is within the field of administrative discretion. The fact that an individual performs service in or upon a public building, such as a school, does not make him a civil servant or an employee of the governmental subdivision receiving the benefit of his labor. He becomes a civil servant or employee only when he furnishes his services or labor for compensation directly paid to him by the State, civil subdivision or Board, or for pay fixed by the State, subdivision or Board when they control his selection. With this in mind we may examine the constitutional provision invoked to sustain the view that the indirect system may not be lawfully used.

Article V, section 6, of the Constitution provides: "*Appointments* and promotions *in the civil service of the state,* and of all the civil divisions thereof, *including cities* and villages, *shall be made according to merit* and fitness to be *ascertained,* so far as practicable, *by examinations,* which, so far as practicable, shall be *competitive;* * * *. Laws shall be made to provide for the enforcement of this section." (Emphasis supplied.)

An analysis of the foregoing language discloses that it does not purport to require that services furnished or labor performed in connection with any governmental activity must be done by individuals directly employed by the State or city or a civil subdivision thereof. The language leaves untouched the power of the Board of Education under statutes hereinbefore cited to have work or labor furnished to clean or care for school buildings under such systems or methods as the Board deems desirable in the exercise of its administrative or executive discretion from the viewpoint of efficiency and economy. The foregoing constitutional provision becomes applicable to the action of the Board only when it sees fit to have work done or

labor performed by individuals directly employed by it, or where it retains control of the compensation to be paid to individuals doing the work, or of their selection or the conditions of their employment. Only in such an event is the Board obligated to comply with the constitutional provision. This conclusion results from the fact that the constitutional provision applies only to " appointments and promotions in the civil service of the state ". Under the indirect system here attacked the individuals are hired by the custodians as their helpers. They are not approved by or directly employed by the Board, nor is control retained by it of the number, compensation, or terms of employment of these individuals and, therefore, they are not " in the civil service of the state ". They are employees of the custodians. The latter fact has been judicially determined. (*Matter of Bederman* v. *McNamara,* 268 N. Y. 510; *Matter of New York State Labor Relations Board* v. *Hudson,* 293 N. Y. 671; *Matter of Dowling* v. *Palmer,* 35 Misc. 316.)

There are many cases which hold, despite article V, section 6, of the State Constitution, that municipal corporations may engage individuals to do work or contract to have work done by other than civil servants even where such work could have been done (although possibly with less satisfaction) by individuals taken from civil service lists. (*Matter of Hardecker* v. *Board of Education of City of N. Y.,* 292 N. Y. 584; *Matter of Civil Service Technical Guild* v. *La Guardia,* 292 N. Y. 586; *Matter of Curran* v. *Bd. of Estimate of City of N. Y.,* 173 Misc. 1022, affd. 259 App. Div. 712, leave to appeal denied 283 N. Y. 778; *People ex rel. Seib* v. *Redfield,* 86 App. Div. 367.) To be sure, some of these cases are affected by the elements of emergency and special conditions connected with temporary situations, but this merely emphasizes that there are distinctive or peculiar factors which affect the scope or field of administrative discretion, such as are present here, and which warrant or necessitate executive resort to differing modes of action to meet different special problems.

Certain anomalous features are invoked to sustain the view that the constitutional provision cited bans the use of the indirect system. One is that the custodian seems to have a dual status. He has the status of a civil service employee, since he is appointed from a list, with a basic salary utilized for pension and retirement system purposes. At the same time he has the status of an employer or contractor because he is paid a lump sum for work done in part by helpers he employs, for whom he is required to furnish workmen's compensation coverage. But the exist-

ence of a dual status involving a public employee is not without precedent. (*Matter of Flaherty* v. *Milliken*, 193 N. Y. 564; *Matter of Grifenhagen* v. *Ordway*, 218 N. Y. 451; *Matter of O'Brien* v. *Ordway*, 218 N. Y. 509.) Those cases recognized a relationship existing prior to the enactment of article V, section 6, of the State Constitution, and a practice founded thereon in respect of appointments of certain individuals without regard to civil service requirements. They held that the constitutional provision and statutes were inapplicable because of the status existing as between the appointing officer and the appointee, which status antedated the adoption of article V, section 6, of the Constitution. In the instant case the use of the indirect system likewise antedated the adoption in 1894 of the constitutional provision. It may be inferred that the language of the section was aptly chosen so as to exclude the application thereof to the then existing practice in respect of the indirect system. This view is reinforced by the innumerable failures to procure the enactment of statutes proscribing the indirect system and the similar failures to induce the Constitutional Convention of 1938 to amend article V, section 6, so as to compel or effectuate direct employment of helpers of custodian engineers.

This analysis and history lead to the conclusion that the language of article V, section 6, not only does not comprehend within its terms the indirect system or the helpers of custodians who work thereunder, but that it never was intended to include them; and that apt language purposely excluded them from the requirements of article V, section 6, of the Constitution. We are not concerned with the wisdom of this exclusion. That phase is one for regulation by the adoption of appropriate constitutional provisions or legislative enactments based on considerations of policy as to the scope of discretion to be given to executive or administrative officials. There may or may not be a need for flexibility in administrative action, since in some situations custodian helpers may be required on a full time basis and in others only on a part time basis; and one system or the other in particular situations may or may not be more economical or more wasteful or inefficient. But the decision of such problems is not for the courts. Action based on any other view, such as is reflected in the provisions of the judgment herein, would be a judicial usurpation of executive power or of legislative power to prescribe by constitutional provisions or statutes the scope of executive or administrative authority.

The case of *Matter of Turel* v. *Delaney* (285 N. Y. 16) is not to the contrary. There the Board of Transportation of the City of New York made a contract with an individual under which he was to supply such medical and surgical care to workmen of the City-owned transit system as is required by the Workmen's Compensation Law. He was to be paid a specified sum per year, and a specified sum was also to be paid each assistant he employed to aid him, and similar specified amounts for other individuals he selected. These sums were fixed by the Board, and the selection of these individuals was subject to its approval. They were in substance, if not in form, employees of the Board. It was held that this arrangement violated article V, section 6, of the Constitution; and that the services to be rendered were susceptible of performance equally well by individuals selected by competitive examination. In the instant case the Board has no control of the individuals who act as helpers of the custodians. It does not fix their compensation or the conditions under which they are to work or the periods of time they are to work. It does not employ them or discharge them. In these and other particulars the *Turel* case may be distinguished.

It may be noted that in *State, ex rel.,* v. *Witt, Treas.* (3. Ohio App. 414) the use of this indirect system of custodial care was found to be legal and not violative of a civil service constitutional provision substantially the same as the one with which we are here concerned.

Accordingly we conclude that article V, section 6, of the State Constitution is not violated by defendants' utilization of the indirect system for the cleaning and maintaining of public school buildings; that the constitutional provision has no application; that whether that system should be continued is a matter of executive discretion, unless and until it is interdicted by the adoption of a constitutional provision or prohibited by a legislative enactment.

The order, and judgment insofar as appealed from, should be reversed on the law, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLOSE, P. J., JOHNSTON, ADEL and ALDRICH, JJ., concur.

Order, and judgment insofar as appealed from, reversed on the law, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs. Permission to appeal to the Court of Appeals is hereby granted.