In the Matter of SAMUEL W. CORWIN et al., Appellants, against THOMAS F. FARRELL et al., Constituting the New York City Housing Authority, et al., Respondents.

Argued May 16, 1951; decided July 11, 1951.

*Sanford Solarz* for appellants. I. The notices of dismissal of appellants were given in violation of section 6 of article V of the State Constitution and section 31-a of the Civil Service Law, and hence are null and void. (*Palmer* v. *Board of Educ.*, 276 N. Y. 222; *Matter of Turel* v. *Delaney*, 285 N. Y. 16; *Matter of Edkins* v. *Wotherspoon*, 173 App. Div. 330; *Danker* v. *Department of Health*, 153 Misc. 502, 266 N. Y. 365; *Matter of Kraus* v. *Singstad*, 275 N. Y. 302; *Matter of Wipfler* v. *Klebes*, 284 N. Y. 248; *Matter of Andresen* v. *Rice*, 277 N. Y. 271; *Matter of Neary* v. *O'Connor*, 173 Misc. 696, 260 App. Div. 986.) II. The contracts for letting out of title examination to the abstract corporation were illegal since such contracts violated section 6 of article

V of the State Constitution. (*Palmer* v. *Board of Educ.*, 276 N. Y. 222; *Matter of Turel* v. *Delaney*, 285 N. Y. 16; *Danker* v. *Department of Health*, 153 Misc. 502, 266 N. Y. 365; *Matter of Kraus* v. *Singstad*, 275 N. Y. 302; *Matter of Andresen* v. *Rice*, 277 N. Y. 271.)

*Irving Wise, Gerald J. Carey* and *Abram Rothfeld* for respondents. I. The contracts for title information do not involve an employer-employee relationship and consequently do not come within the purview of civil service requirements. (*Matter of Drummond* v. *Kern*, 176 Misc. 669; *Matter of Civil Service Tech. Guild* v. *La Guardia*, 181 Misc. 492, 292 N. Y. 586; *Beck* v. *Board of Educ. of City of N. Y.*, 268 App. Div. 644, 295 N. Y. 717; *Guastoferri* v. *Board of Educ. of City of N. Y.*, 270 App. Div. 946.) II. The contracts for title information having rendered appellants' services unnecessary, the authority had the right and duty to abolish their positions. (*Matter of Edkins* v. *Wotherspoon*, 173 App. Div. 330; *Matter of Wipfler* v. *Klebes*, 284 N. Y. 248; *Matter of Turel* v. *Delaney*, 285 N. Y. 16.)

FROESSEL, J. The basic question in this article 78 proceeding is whether respondents, the New York City Housing Authority and the members thereof, acted legally in dismissing the seven appellants from their civil service positions as title examiners, after the Authority had entered into contracts with a private abstract company to perform title examination work.

Appellants, as a result of open competitive civil service examinations, were duly appointed as permanent title examiners, grade 2, by the Authority at various times from 1943 to 1947. They sought in this proceeding an order directing in substance: (1) that the Authority's notices of dismissal, dated May 4, 1950, be declared null and void; (2) that appellants be reinstated with retroactive pay; and (3) that certain contracts made by the Authority with the City Abstract Corporation be declared null and void. Special Term denied the relief sought, and the Appellate Division unanimously affirmed.

The facts are virtually undisputed, and the parties agree that the issue is solely a question of law. The Authority is a public corporation engaged, pursuant to article XVIII of our State Constitution and the Public Housing Law, in the construction and operation of public low rent housing projects. The Author-

ity obtains loans and subsidies from the Federal Government, the State and the City of New York, but the site-acquisition phase of the city-aided program was fully completed early in 1950, and thus no further title examination remained to be done in that connection. In the cases of the Federal-aided and State-aided projects, the contracts for financial assistance repose in these governments a large amount of supervision over the expenditures made by the Authority; the costs incurred, including the cost of title examination work, are subject to audit, review and approval by both the Federal and State lending agencies.

In connection with the acquisition of sites for projects of the Authority, a large volume of title examination work was required. Nearly all such work was performed by title examiners and others who were on the payroll of the Authority, but who worked exclusively from and under the complete supervision of the office of the corporation counsel of the city of New York. The Federal and State Government lending agencies protested the cost of title examination by the " force account " method, and brought pressure upon the Authority to reduce it.

In October, 1945, the State Division of Housing restricted the Authority from expending any further funds for title examination work until a more satisfactory method of performing it could be arrived at, and said division proposed that contracts for title examination be let. In July of the following year said division expressed its continued dissatisfaction and again insisted that the title work be done by contract. In August, 1946, a " pilot " contract for title examination was let. In May, 1948, the State agreed to remove the restrictions imposed by it on expenditures for title examination on previous projects, provided that in the future all work on State-aided projects be let by contract after competitive bidding.

The Federal Public Housing Administration adopted a standard form of contract applicable to local housing authorities throughout the nation which requires such authorities, including respondent, to use the " contract " method for land surveys and title information for all Federal-aid projects hereafter to be developed; the State of New York and the Port of New York Authority likewise use such method.

In February, 1950, after many conferences with representatives of the Federal and State Governments, the Authority entered into two contracts with the City Abstract Corporation providing for a base charge for title certifications of $19.40 per parcel, said corporation having submitted the lowest figure among six sealed bids. Thereafter, appellants were dismissed, effective in May and June of 1950; four remaining title examiners are being continued in service. The Authority estimated that the reduction in title examination costs in 1950 by having title examination work done on the contract basis rather than by the direct force method was about $90 per parcel.

We are also told of advantages accruing from the contract system: (1) the abstract company assumes a liability to the Authority in the event of error due to negligence, which respondents' title examiners do not; (2) the contract method enables the Authority to budget its title examination costs in a fairly accurate way, whereas the force account method resulted in budget overruns; and (3) the contracts require the services to be performed within specified time limits, whereas under the direct force method it may be necessary for the Authority to employ additional personnel in order to meet the demands of a heavy workload period, resulting in sporadic employment with its concomitant disadvantages, while in quiescent periods it requires much less help.

Respondents maintain that they have tried to find ways and means to avoid dismissing the title examiners and for many years have resisted the pressure to disband their title examination staff, but have now reached the point where as a practical matter they have very little choice because of the insistence of the Federal and State lending agencies, and their good faith has in nowise been challenged.

Appellants maintain that the action of the Authority is in violation of section 6 of article V of our State Constitution: " Appointments and promotions in the civil service   *   *   * shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ", and section 31-a of the Civil Service Law, which provides that an employee " may maintain a mandamus proceeding for his re-instatement   *   *   *

where it is shown that another person not appointed in accordance with the provisions of this chapter is employed in the same or a similar position, or assigned to or permitted to perform substantially similar duties or services theretofore performed by any such suspended employee."

Certainly the command of the Constitution must be obeyed, and an appointment or promotion which violates this mandate may not be sanctioned by the courts, despite the good faith of the parties (*Palmer* v. *Board of Educ.*, 276 N. Y. 222). Statutory exemptions by blanket enactment have been properly condemned (*Matter of Ottinger* v. *State Civil Service Comm.*, 240 N. Y. 435; *Matter of Kraus* v. *Singstad*, 275 N. Y. 302; *Matter of Andresen* v. *Rice*, 277 N. Y. 271); and no method employed to evade, disregard or weaken the constitutional and statutory safeguards protecting the civil service may be permitted to succeed, however artfully concealed or cloaked (*Matter of Wippler* v. *Klebes*, 284 N. Y. 248; *Matter of Carow* v. *Board of Educ.*, 272 N. Y. 341). When any attempt is made to do so, the courts stand ready to defeat such effort and to protect the rights of civil service employees. We have done so on many occasions, as illustrated by the foregoing citations, and again in *Matter of Turel* v. *Delaney* (285 N. Y. 16), where, under the guise of an independent contract, an attempt was made to retain the services of a physician to supply medical and surgical care and treatment of employees of the board of transportation of the city of New York, injured in the course of their employment. For such services the physician was to be paid a fixed salary of $10,000 per year, and stipulated compensation over regular periods for each assistant surgeon, graduate nurse and a junior surgeon, none of whom was to be selected by means of competitive examinations, but their employment was to be " subject to approval by the Board," (*supra*, p. 19) and which arrangement was tantamount to an employee relationship, a situation quite unlike that presented here.

On the other hand, neither constitutional mandate nor statutory enactment requires that all services furnished or all labor performed for a governmental agency must be supplied by persons directly employed. It is common knowledge that such agencies have over a long period of years let contracts without

question for the construction of buildings, roads, tunnels, bridges and other public improvements (see, e.g., N. Y. Const., art. I, § 17; art. IX, §§ 9, 10, 12; art. XVIII; Public Housing Law, § 32, subd. 1; § 37, subd.1, cl. [v]; Public Works Law, particularly §§ 8, 14, 15; Lien Law, § 2, subd. 7; art. 2, particularly §§ 5, 16, 25, 25-a, 25-b; § 42; Labor Law, art. 8), and for special services, as, by way of illustration, *Matter of Fleischmann* v. *Graves* (235 N. Y. 84); *Matter of Clark* v. *Smith* (250 App. Div. 233, affd. 276 N. Y. 473); *Matter of Curran* v. *Board of Estimate of City of N. Y.* (173 Misc. 1022, affd. 259 App. Div. 712, motion for leave to appeal denied 283 N. Y. 778), particularly when not related " to conventional and stable duties of the functionaries of civil government." (*Matter of Social Investigator Eligibles Assn.* v. *Taylor,* 268 N. Y. 233, 237.) Indeed, section 9 of article IX of our State Constitution expressly authorizes the Legislature to " regulate and fix the wages or salaries, the hours of work or labor, and make provision for the protection, welfare and safety of persons employed  *  *  * *by any contractor or subcontractor performing work, labor or services for the state,* or for any county, city, town, village or other civil division thereof." (Emphasis supplied.) Section 12 of the same article empowers cities to adopt laws relating, among other things, to precisely the same subject matter.

We have held independent contractual arrangements valid in a number of cases. *Matter of Hardecker* v. *Board of Educ.* (180 Misc. 1008, affd. 266 App. Div. 980, affd. 292 N. Y. 584) involved the legality of contracts between the board and private architects and engineers for part of the architectural and engineering work required in connection with the city's program for the postwar construction of public buildings. Theretofore plans and specifications for city school buildings had for many years been wholly prepared by employees of the bureau of construction. Upon the application of an assistant engineer in said bureau, who maintained this practice might affect his right to continued employment, and a structural steel draftsman on the eligible list who had been previously dropped from the department for lack of work or funds, we held such contracts may be validly made. In *Matter of Civil Service Tech. Guild* v. *La Guardia* (181 Misc. 492, affd. 267 App. Div. 860, affd. 292

N. Y. 586), a substantially similar situation was presented, except that it involved postwar projects other than schools, and we came to the same conclusion.

In *Beck* v. *Board of Educ.* (182 Misc. 886, revd. 268 App. Div. 644, affd. 295 N. Y. 717) the question presented was whether the "indirect" custodial system employed by the board met the test of section 6 of article V of the Constitution. Under that system a custodian, appointed in accordance with the Civil Service Law, was permitted to engage and discharge at will all matrons, firemen and other help. Special Term held the system violated our Constitution, but this court held to the contrary in affirming the Appellate Division's reversal of Special Term. (See, also, *Matter of Curran* v. *Board of Estimate of City of N. Y., supra; People ex rel. Seib* v. *Redfield,* 86 App. Div. 367; *Matter of Drummond* v. *Kern,* 176 Misc. 669.)

Under the circumstances here presented, and in the light of these decisions, we are of the view that the Authority's action here was within its power, that it was not exercised in bad faith, arbitrarily or capriciously, nor in an attempt to evade the civil service laws. It has not appointed individuals in the places of those dismissed, but, because of the unusual situation it faced, to which we have already adverted, it entered into a normal modern business practice of purchasing abstracts and certifications of title at a fixed price. The Authority does not select, control or even approve the officers or employees of the contractor; does not fix their compensation or their hours of work; does not engage them exclusively nor restrict them from engaging in their regular business with anyone they choose; there is no employer-employee relationship whatever; and these contracts do not constitute an "appointment" in the civil service.

This is not to say that any type of service performed by civil service employees may be contracted to private firms, and where such contracts are employed as a scheme to oust civil service employees simply to make room for others, or to mask a true employment relationship, or to circumvent the civil service laws, even if not made in bad faith, we shall not hesitate to strike them down as we did in *Matter of Turel* v. *Delaney* (*supra*).

Accordingly, the order of the Appellate Division should be affirmed, with costs, and, since this case directly involves the construction of section 6 of article V of the State Constitution, the motion to dismiss the appeal should be denied, with $10 costs.

CONWAY, DESMOND and DYE, JJ., concur with FROESSEL, J.; LOUGHRAN, Ch. J., LEWIS and FULD, JJ., dissent and vote to reverse the order appealed from and to grant the relief prayed for in the petition upon the authority of *Matter of Turel* v. *Delaney* (285 N. Y. 16).

Order affirmed, etc.