Breitel, J. (dissenting).
I dissent and vote to affirm the order of the Appellate Division holding that plaintiffs have *441 standing to sue and that the budget and appropriation laws are constitutionally valid. The issues are of such great importance to the operation of State government, to the plaintiffs, and to the people of the State that I consider it necessary to comment at some length.
This appeal presents the issues of the constitutional validity of the State’s appropriation acts for 1971-1972 (L. 1971, ch. 50, 53, 54) and the standing of plaintiffs to challenge their validity. The acts were adopted by the Legislature after submission by the Governor of his annual budget, as required by the State Constitution, accompanied by appropriation bills to implement the budget. The budget and the bills received considerable attention in the Legislature and unusually widespread publicity. They were subjected to severe cuts in expenditures in an atmosphere of tension and controversy described as the “ budget crisis ”. On no view of the matter can it be said that the appropriation bills did not receive critical supervision by the Legislature or that the Legislature was unable to make the cuts it sought.
The Executive Budget, as distinguished from the implementing appropriation bills, is a book of 845 pages with estimates and schedules of revenues and recommended expenditures. The total budget request was $8.45 billion. The total appropriations adopted after the legislative reductions aggregated $7.7 billion. Concededly, and obviously on examination, the appropriation acts contain relatively little detail of expenditures and include liberal provisions for transfer of appropriations, as may be needed, among the purposes and projects authorized. On the other hand, the budget contains more or less detail, in some instances in as much detail as plaintiffs urge is necessary, and in other instances less in varying degrees.
Plaintiffs attack the validity of the appropriation acts and the budget, upon which they were based, on the view that, in violation of the Constitution, they consist largely of lump sum appropriations rather than itemized appropriations. Plaintiffs include State employees whose services were terminated as a result of the reductions in the State appropriations. Joined as a plaintiff is the association which represents a majority of State employees, a significant number of whom may be *442 imperiled in the retention of their State positions as a result of so-called budget cuts.
For reasons to be stated, plaintiffs have standing to pursue this action, to declare the appropriation acts invalid and to enjoin expenditures thereunder; but it is also concluded that the budget and appropriation acts are constitutionally valid.
The Constitution requires the Governor to submit to the Legislature “ a budget containing a complete plan of expenditures ” (art. VII, § 2). At the same time he is required to submit “ a bill or bills containing all the proposed appropriations and reappropriations included in the budget and the proposed legislation, if any, recommended therein ” {id., § 3). The Legislature ‘ ‘ may not alter an appropriation bill submitted by the governor except to strike out or reduce items therein, but it may add thereto items of appropriation provided that such additions are stated separately and distinctly from the original items of the bill and refer each to a single object or purpose ” {id., § 4).
These are the significant references to ‘ ‘ items ’ ’ contained in the Constitution in providing for the budget and appropriations. Much is made whether itemization is required of the budget as distinguished from the appropriation bills and conversely. On the analysis to follow, the distinction is not important.
There is, undoubtedly, a serious question whether plaintiffs, dismissed or prospectively dismissed employees of the State, have standing to pursue this action. If defendants’ analysis on the merits of the questions involved is fully credited, plaintiffs have no standing. This follows from the argument that the executive branch would have no greater and no less control over the performance of the functions of government if the appropriation acts are itemized in detail, as plaintiffs argue they must be, or if the appropriation acts consist largely of so-called lump sum appropriations related to plans and programs scheduled in the budget plan submitted by the Governor. On the .other hand, if plaintiffs’ analysis is fully credited then they have standing. This follows from their argument that through detailed itemization of personal service in the appropriation acts, the Legislature, by approval of the Governor’s recommendations, would as a matter of law mandate the continuance of positions in the civil service, and as a corollary *443 direct the expenditure of State moneys out of the general fund to pay them. As a consequence of these balancing arguments plaintiffs have standing to pursue this action because if they are right in their arguments they have been directly aggrieved by the type of “ lump sum ” appropriation acts enacted. They have lost their positions, or their positions have been imperiled, by the kind of appropriation acts adopted. Plaintiffs’ interest as State employees is readily distinguishable from the interest shared by taxpayers generally (see St. Clair v. Yonkers Raceway, 13 N Y 2d 72; Matter of Posner v. Rockefeller, 26 N Y 2d 970). Their qualified right to continued State employment gives them an additional interest not shared by taxpayers to attack legislation which they allege illegally denies them continued employment or security of such employment (see Matter of Wipfler v. Klebes, 284 N. Y. 248, 254-255; Matter of Corwin v. Farrell, 303 N. Y. 61, on the qualified right to employment). This private right, regardless of its dimensions, is a proper basis for permitting them to pursue this action (cf. Matter of Donohue v. Cornelius, 17 N Y 2d 390, 396-397; Ann., Statutes—Validity— Who May Question, 174 A. L. R. 549, 562-563). They sue not as mere taxpayers but rather in their private right as civil service employees whose positions, they allege, were abolished as a result of a chain of illegal procedures.
On the other hand, it is true that if they were wrong on the merits as to what is constitutionally required of appropriation acts they will have lost the action. But this is a lack of standing in a substantive and not a procedural sense. They are not entitled to recover judgment in their favor, but they are entitled to assert their contentions which, if correct, would have produced a contrary result. The test of standing is not the likelihood of success in the action but the nature of the grievance alleged.
Plaintiffs are correct in their contentions that the holdings of the Tremaine cases are to the effect that the Governor has the duty and power to submit an ‘ ‘ itemized ’ ’ budget plan and appropriation bills to implement that plan (People v. Tremaine, 252 N. Y. 27; People v. Tremaine, 281 N. Y. 1). When, as happened in 1939, the Legislature rejected the Governor’s items and substituted lump sum appropriations, it violated the constitutional design for executive budget making and control. *444 Despite language in the second Tremaine case (supra) to the effect that a definable level of itemization by the Governor is required of him, that language is no more than explanatory elaboration of the process (id., pp. 7-8). The rub is the meaning of itemization.
There is a constitutional mandate to itemize. There is no constitutional definition of itemization. There is no judicial definition of itemization and no inflexible definition is possible. Itemization is an accordion word. An item is little more than a “ thing ” in a list of things. A house is an item, and so is a chair in the house, or the nail in the chair, depending on the depth and purpose of the classification. The specificness or generality of itemization depends upon its function and the context in which it is used. In one context of a budget or appropriation bill the description of 1,000 police officers within a flexible salary range would be specific and particular; in another it would leave the appointing power with almost unlimited control. In one context an ‘ ‘ item ’ ’ of $5,000,000 for construction of a particular expressway might seem specific; in another, void of indication when, how, or where the expressway or segments of it would be constructed. This suggests that there is something of a battle over words in debating the need for items, rather than a grappling with a functional concept.
All parties agree that the function of items in the budget plan and the appended appropriation bills is to provide the Legislature the opportunity to approve or disapprove of programs and expenditures. This suggests the usefulness and mode of items, but does not provide precise limits of the term. The degree of particularity is, therefore, not susceptible of precise judicial determination. The Legislature (of course by majority action) determines the sufficiency of the particularity of items. If there are insufficiently detailed items it has the power to strike out the items and thereby require the Governor to submit more particular detail, or it may alternatively investigate the mine of data available in the several budget hearing procedures which precede the making of the budget. Notably, the finance committees of the Legislature participate in these budget procedures. If thé Legislature is satisfied with the Governor’s submitted items, however broad, they have performed their constitutional function of making appropriations. If they are *445 satisfied that they cannot perform their function properly without more detail, it is their power- and their obligation to require greater detail, that is, more -subdivided itemization, in the budget plan or the appropriation bills or in both. Direct concern with the degree of particularization or subdivision of items lies exclusively with the executive and legislative branches of government simply because they are the sole participants in the -negotiation and adoption of an executive budget.
This is not to say that the validity of budgets and appropriation acts are beyond judicial scrutiny and review. It is to say that the scope of itemization is peculiarly a legislative function and by the flexibility of the term beyond precise judicial delineation.
Obviously there is a public interest in the budget plan and the appropriation acts. But that interest is best served through the public’s political channels acting upon their elected officials in both the executive and legislative branches. That interest, with respect to the degree of itemization required or desirable, cannot be served through the prosecution of litigation in the courts. If the concept of itemization has been correctly described, the courts, because they neither propose nor adopt the budgets and appropriations for the other branches of government, have neither need to know nor any way to know how much itemization or subitemization is necessary or appropriate. But the Legislature knows -or should know. Of course, if the Legislature subordinates itself to the Executive it might fail to perform its proper control over the appropriation and expenditure of State moneys; but it could fail just as easily with a minutely itemized budget plan and appropriation bill. The power and the remedy, both legal and political, for any executive abuse is in the Legislature’s reach.
In summary then, the degree of itemization required under the Constitution is that which the Legislature requires to determine whether it will approve or disapprove the Governor’s proposals. It should not supinely accept less, but if it does the courts cannot remedy the defect, if only because the courts cannot make budgets or pass upon the sufficiency of “ items ” in appropriation bills. As a consequence the reasoning is circular if only because it must be so. Appropriation acts if itemized sufficiently *446 to obtain legislative approval, are sufficiently itemized. On this view the acts at issue are valid.
Turning to another troubled aspect of budgeting, it is obvious that transfer provisions if broad enough can make budget plans and appropriation acts implementing them almost without meaning. But, as a corollary of the reasoning last detailed, the propriety or sufficiency of transfer provisions depends upon what the Legislature is ready to accept. Transfer provisions are really strings attached to the appropriated items and to that extent‘ ‘ de-itemize ’ ’ them depending how unrestricted or unconditioned are the transfer provisions. Consequently, transfer provisions are valid because the Legislature has enacted them, and thereby approved flexibility in the appropriated items. If the Legislature is or should become concerned that the transfer provisions give the Executive too much leeway and deprives them of the supervisory power they have and wish to exercise, the remedy is in their hands. The point is that there is no constitutional invalidity involved so long as ultimately, however done, the Executive proposed the appropriations and there is agreement as to the limitations and conditions they contain.
If the analysis thus far is correct it means that between the Executive and Legislature, so long as they agree, they could do much that would not surface for public understanding and criticism. If that is not good, the remedy is to amend the Constitution to prescribe new standards for budget-making and appropriations. Obviously, the concept of itemization is no such standard and probably was never intended so much to provide public information as to permit interaction between the Executive and the Legislature.
Of course, the system of checks and balances has always assumed that it was not possible politically to achieve constant agreement between the branches of government. And the assumption is correct. It was demonstrated in the recent budget crisis in the Legislature when the Legislature, dominated by the same party as the Governor’s, cut his budget mercilessly. The budget-cutting reveals another interesting thing; it proves that the lump sum appropriations were itemized enough to serve the Legislature’s purpose. Indeed, the lump sum character made it easier rather than harder for the Legislature to cut the Governor’s budget.
Accordingly, I dissent and vote to affirm.