■ In the Matter of WESTCHESTER COUNTY CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., et al., Respondents, v JOSEPH A. CIMINO, as Commissioner of Hospitals of the County of Westchester, et al., Appellants.—In a proceeding pursuant to CPLR article 78, *inter alia,* to compel the reinstatement of the individual petitioners to their job positions, the appeal is from a judgment of the Supreme Court, Westchester County, dated March 22, 1977, which granted the petition by (1) declaring that the job positions had been abolished in bad faith and (2) reinstating the individual petitioners to their positions with full back pay and benefits, retroactive to December 31, 1976. Judgment reversed on the law, without costs or disbursements, and proceeding dismissed on the merits. Until December 31, 1976 petitioners were employed by appellant Westchester County as permanent watchmen in the labor class of the civil service and were assigned to duties at the county's medical center. In addition, during 1976, additional security at the medical center was furnished by a private security firm pursuant to a contract with the county. In preparing the budget for 1977, the county rejected a proposal to create a new 21-man security force composed entirely of county employees and noted that "by private contract the County does not incur any cost for uniforms or fringe benefits which currently average 32% of gross salary." Thereafter the county adopted a budget which made no provision for either watchmen or security guards. The individual petitioners' positions were abolished as of December 31, 1976. Since the 1976 contract with the private security guards at the medical center expired on December 31, 1976, the county authorized competitive bidding for an emergency, three-month, private security guard contract. This contract was awarded to the firm of Effective Security, Inc. (Effective), and private guard service under the new contract commenced as of January 1, 1977. Petitioners then commenced this proceeding, seeking reinstatement to their positions "as security guards" at

the medical center, with full back pay and benefits retroactive to December 31, 1976. The thrust of the petition was that the 1977 contract between the county and Effective masked an employer-employee relationship between the county and Effective's employees and that the latter had been appointed to the individual petitioners' civil service job positions in violation of the New York State Constitution, and, in particular, section 6 of article V thereof, which provides, in pertinent part: "Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive". In granting the petition, the Special Term adopted petitioners' arguments, directed that the individual petitioners be reinstated and declared that their positions as watchmen had been abolished in "bad faith". We disagree with the conclusion reached by the Special Term. It is well settled that municipal subdivisions of the State are free to contract with private industry for the rendition of work and services and that section 6 of article V of the State Constitution does not require that all services provided to a county be performed by persons directly employed by it (Matter of Corwin v Farrell, 303 NY 61, 66). A contract for the provision of services by the private sector to the government can be challenged as violative of section 6 of article V of the Constitution only where the private contracting party's employees are not independent of the government, but are controlled and supervised by government officials (Matter of Corwin v Farrell, supra). In Corwin, tenured competitive civil service employees were discharged by the New York City Housing Authority after that authority contracted with a private corporation for the performance of the same title examination services which the civil service employees had previously been performing. In dismissing the government employees' challenge to the legality of their dismissal and the propriety of the contract, the Court of Appeals specifically held (p 66) that "neither constitutional mandate nor statutory enactment requires that all services furnished or all labor performed for a governmental agency must be supplied by persons directly employed" by it. The Court of Appeals, in Corwin, stressed that the contract had to be analyzed to determine whether it was a normal contract entered into by the government with an independent contractor, or a subterfuge to conceal an employer-employee relationship between the government and the contractor's employees. In Corwin the court noted that the authority did not (1) select, control or even approve the officers or employees of the contractor; (2) fix their compensation or hours of work; or (3) engage them exclusively or restrict them from engaging in their regular business with anyone they chose. These facts, and the numerous demonstrable advantages which flowed to the authority by virtue of the contract, including a substantial savings of money, led the court in Corwin to uphold the contract therein. Moreover, the court in Corwin upheld the validity of the contract despite the existence of a three-day termination notice provision and a provision giving the authority the right to make reasonable directions or requests incidental to the performance of the contract. In applying the holding of Corwin to the facts at bar, it is clear that the contract herein did not mask an employer-employee relationship between the county and the private security guards. Initially, it should be noted that, under Corwin, it is of no moment that the duties performed by the employees under the private contract are identical to the duties performed by the terminated governmental employees. The key question to be resolved is the extent of control exercised by the county over the private contractor's employees. Although the duties of the private

security guards overlap to some degree with those duties formerly performed by the individual petitioners, it is our view that they also differ in significant respects. However, even assuming, *arguendo,* that the individual petitioners are correct in characterizing their duties as identical to those of the security guards, that fact alone would not be determinative of the key issue herein, i.e., the degree of control exercised by the county over the private security guards (see *Matter of Corwin v Farrell, supra).* In resolving this latter issue we note the following salient features of the contract at bar: (1) Although the county requires the payment of certain minimum wages, it did not fix the salaries of the private security guards; (2) The county did not require that the security guards provide their services exclusively to the county; (3) Effective paid all Social Security and other appropriate taxes; (4) Effective had the right to hire its own employees without county approval; (5) The county had no power to select or control the officers of Effective; (6) The county had no power to control which guard was assigned to any particular guard post; and (7) Effective's supervisors exerted day-to-day control over the guards. In addition, the county reaped the following benefits from the contract: (1) Effective provided all materials, tools and equipment; (2) The county would not be liable for any damages to persons or property; and (3) The county saved the substantial hidden cost of employee fringe benefits. Moreover, under *Corwin,* it is clear that the Special Term erred in basing its holding on both the 30-day termination provision in the contract and the provision allowing the county to make "rules and regulations to govern the manner in which the guard shall perform his duties so that the conduct of the guard shall not be improper or objectionable." In sum, the contract entered into between the county and Effective was a legitimate attempt by the county to have services provided to it by an independent contractor in a more cost-efficient manner. There is nothing in the State Constitution or the Civil Service Law which bars this action by the county (see *Matter of Corwin v Farrell, supra).* Accordingly, the judgment must be reversed and the petition dismissed on the merits. Latham, J. P., Shapiro, Hawkins and Suozzi, JJ., concur.