—In a proceeding pursuant to CPLR article 78 (1) to compel the Board of Education of the City School District of the City of New York to rescind certain resolutions adopted by it on October 5, 1977, which awarded contracts to private contractors for the custodial care of certain public schools, and (2) to enjoin and restrain the board from abolishing the civil service job positions of any of the petitioners and from contracting to private contractors custodial work theretofore performed by the petitioners, the appeal is from a judgment of the Supreme Court, Kings County, entered December 6, 1977, which granted the petition in all respects. Judgment reversed, on the law, without costs or disbursements, and proceeding dismissed on the merits. This appeal presents the question of whether the plan of the Board of Education of the City School District of the City of New York (the board) to hire private contractors to perform custodial services at 22 public schools in the City of New York is unconstitutional. Petitioners herein are all school custodians and/or school custodian-engineers who are members of Local 891 of the International Union of Operating Engineers. Each holds the position of school custodian and/or school custodian-engineer, which positions are in the competitive class of the classified civil service. At the time this suit was commenced all were employed by the board. In August and September, 1977 the board, pursuant to prior solicitation, received bids from private contractors to perform private custodial services for a number of public schools in the City of New York. Prior to that time, only five schools and one board building in the city had custodial services provided pursuant to a contract between the board and a private contractor. All other custodial services were provided pursuant to a so-called "indirect system”. Under that system, the board would hire a custodian in accordance with civil service regulations. The custodian was a civil service employee. Each custodian was allotted funds based upon certain criteria *922 relating to his school. The custodian was required to perform the necessary custodial services with these funds. For this purpose, the custodian hired employees and purchased equipment and materials. These personnel were employees of the custodian and not of the board. The number of employees and their type were determined by the custodian. On October 5, 1977 the board adopted 22 resolutions awarding contracts for the custodial care of 22 public schools. According to the board, the position of custodian was vacant in all 22 schools at the time. Petitioners commenced the instant proceeding by service of an order to show cause, which contained a temporary restraining order barring the board from taking any further action to implement its resolutions pending the hearing of the proceeding. The petition alleged, insofar as it is relevant to this appeal, that the award of the contracts herein was contrary to the provisions of section 6 of article V of the Constitution of the State of New York, which, so far as is applicable, provides: "Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive”. Generally, petitioners alleged that the board’s plan was a device to mask a quasi-employment relationship between it and the employees of the prospective private contractors so as to circumvent the Civil Service Law and the State Constitution. Petitioners alleged that this plan prejudiced their rights as civil service employees by the loss of positions, the reduction of the number of schools to which they could be assigned or transferred and the "loss of the opportunity to increase their pension salary.” In granting the petition, Special Term agreed with petitioners’ argument that the board’s actions were in violation of section 6 of article V of the State Constitution. We disagree with that conclusion. In Matter of Westchester County Civ. Serv. Employees Assn, v Cimino (58 AD2d 869, affd 44 NY2d 985 on the memorandum at the App Div), we had occasion to deal with the situation of a governmental authority contracting with private industry for the rendition of services. We there stated (p 870): "It is well settled that municipal subdivisions of the State are free to contract with private industry for the rendition of work and services and that section 6 of article V of the State Constitution does not require that all services provided to a county be performed by persons directly employed by it (Matter of Corwin v Farrell, 303 NY 61, 66). A contract for the provision of services by the private sector to the government can be challenged as violative of section 6 of article V of the Constitution only where the private contracting party’s employees are not independent of the government, but are controlled and supervised by government officials (Matter of Corwin v Farrell, supra). In Corwin, tenured competitive civil service employees were discharged by the New York City Housing Authority after that authority contracted with a private corporation for the performance of the same title examination services which the civil service employees had previously been performing. In dismissing the government employees’ challenge to the legality of their dismissal and the propriety of the contract, the Court of Appeals specifically held (p 66) that 'neither constitutional mandate nor statutory enactment requires that all services furnished or all labor performed for a governmental agency must be supplied by persons directly employed’ by it. The Court of Appeals, in Corwin, stressed that the contract had to be analyzed to determine whether it was a normal contract entered into by the government with an independent contractor, or a subterfuge to conceal an employer-employee relationship between the government and the contractor’s employees. In Corwin the *923 court noted that the authority did not (1) select, control or even approve the officers or employees of the contractor; (2) fix their compensation of hours of work; or (3) engage them exclusively or restrict them from engaging in their regular business with anyone they chose. These facts, and the numerous demonstrable advantages which flowed to the authority by virtue of the contract, including a substantial savings of money led the court in Corwin to uphold the contract therein. Moreover, the court in Corwin upheld the validity of the contract despite the existence of a three-day termination notice provision and a provision giving the authority the right to make reasonable directions or requests incidental to the performance of the contract.” Analyzing the circumstances of the instant case in the light of Matter of Corwin v Farrell (303 NY 61) and Matter of Westchester County Civ. Serv. Employees Assn, v Cimino (supra), we are persuaded that the resolutions adopted by the board here do not grant the board such control over the employees of the contractors as to render the board’s plan a mere circumvention of the Civil Service Law. While apparently there are no contracts as such in existence at the present time, the likely provisions of such contracts are indicated by two documents circulated by the board to prospective bidders, one entitled "Instructions to Bidders”, and the other entitled "Schedule Specification”. The latter particularly sets out the relationship between the board and the employees of a prospective custodial contractor. From these documents, we find the following: (1) While the board requires the payment of certain minimum wages, it does not fix the salaries of the custodial employees (see Matter of Westchester County Civ. Serv. Employees Assn, v Cimino, supra). We reject the contention of petitioners that the board will control holiday and overtime wages. The specifications provide only a schedule for payment of the contractor for services required which were not within the contemplation of the original contract. The rate of overtime and holiday wages which the contractor pays his employees is a matter for the contractor; (2) The board does not fix the hours of employment. The specifications indicate that they are intended to cover custodial care to be furnished by the contractor in connection with regular occupancy of the building from 8:00 a.m. to 5:15 p.m., Monday through Friday, during the school year. While it is clear that the nature of some of the services to be furnished requires that they be performed during certain periods (for example, heating and air conditioning services are useful to the board only if provided during hours when the school is occupied), within these very general guidelines, the contractor is left to his own discretion in determining the hours which his employees will work; (3) Although the specifications contain a detailed list of all services which the contractor will be required to provide and, in many cases, the frequency of performance of such functions, there is no indication that the board controls the terms and conditions of employment. At the very least, an itemized account of what the contractor would be required to do was necessary to enable him to prepare an intelligent bid. Further, such a detailed account is essential so that each party may know if the other is complying with the contract. This list is merely a general specification of duties. These duties are not particular to any employee (see Matter of Westchester County Civ. Serv. Employees Assn, v Cimino, supra). There is no assertion as to which, or how many, of the employees of the contractor must perform a certain task; (4) The board does not retain control over the hiring practices of the contractor (see Matter of Westchester County Civ. Serv. Employees Assn, v Cimino, supra). There is no provision for direct board supervision of hiring; the board may not specify the number of employees to be hired; the board has no power of *924 approval of employees selected by the contractor; and the board has no power of direct review of employee performance. The board does require that licensed employees be hired where licenses are required by law. However, who those employees are is a matter for the contractor. The board imposes no further restrictions regarding training or expertise of the contractor’s employees. Petitioners also argue that the program of affirmative action required of all contractors establishes board control over the contractor’s hiring practices. We disagree. Again we are presented with only a general provision requiring the employment of a specified percentage of minority workers. The identity of those minority workers is a matter for the contractor and, above the required percentage, the identity of all employees is solely a matter for the contractor. We cannot see an improper level of control in this requirement; (5) The contractor is to supply its own supervision (see Matter of Westchester County Civ. Serv. Employees Assn, v Cimino, supra); and (6) The contractor is responsible for all pension and welfare contributions, all taxes, including Social Security, unemployment insurance, workmen’s compensation insurance, public liability insurance, disability insurance, property damage, etc. In addition, the board is likely to reap substantial benefits from the private contract system, as indicated by two audits of the board’s method of supplying custodial services to its schools, the first conducted by the office of the city comptroller and the second conducted by the office of the State Comptroller. Under all of these circumstances, we conclude that the board’s action in resolving to enter into contracts with private contractors to provide custodial services was "a legitimate attempt by the [board] to have services provided to it by an independent contractor in a more cost-efficient manner. There is nothing in the State Constitution or the Civil Service Law which bars this action by the [board] (see Matter of Corwin v Farrell, supra)” (Matter of Westchester County Civ. Serv. Employees Assn, v Cimino, 58 AD2d 869, 871, affd 44 NY2d 985, supra). Shapiro, J. P., Cohalan, Hargett and O’Connor, JJ., concur. [92 Misc 2d 235.]