GEORGE FIGLIOLA et al., Appellants, v ANTHONY R. AM-ERUSO, as Commissioner of the Department of Transportation of the City of New York, et al., Respondents.

First Department, April 27, 1982

APPEARANCES OF COUNSEL

*Joseph Frost* of counsel (*Edward Idell* with him on the brief; *Rappaport & Frost,* attorneys), for appellants.

*Joan E. Handler* of counsel (*Francis F. Caputo* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

OPINION OF THE COURT

LUPIANO, J.

In this CPLR article 78 proceeding, petitioners seek to compel respondents to grant them a street opening permit authorizing them to permanently restore the street pavement at the opening site, instead of the permit which was granted them and which required that the pavement be permanently restored by the Bureau of Highway Operations at petitioners' expense. Petitioner George Figliola is

a licensed plumber and a principal in the copetitioner corporation. Petitioners' business consists primarily of the installation, repair and replacement of water main connections between the New York City water main, which is located beneath the public roadways, and the premises abutting those roadways. In order to perform this work, petitioners must open the street to reach the city water main. The New York City Bureau of Highway Operations (hereinafter Highways) grants permits to open the streets and marks each street opening permit with a code letter based upon its rules and regulations concerning who may perform the permanent pavement restoration and the charges that may be assessed for that work. Code letter "A" signifies that the pavement is to be restored by Highways at the permittee's expense, and "B" signifies that the pavement is to be restored by the permittee itself.

Petitioners requested that their permit be designated code "B". Since Highways' regulations require that street openings made by licensed plumbers be restored by Highways itself or a paving contractor approved by Highways, Highways declined petitioners' request and granted them a street opening permit bearing code letter "A". Petitioners maintain that respondents' refusal to issue them such permit is arbitrary and capricious and a denial of equal protection. Respondents maintain that Highways' rules and regulations restricting the entities entitled to perform permanent pavement restorations constitute a reasonable exercise of respondents' duty to maintain the public roadways within the city.

The statutory scheme envisions the primary responsibility for the restoration of any pavement removed as being upon respondents — in this instance upon Highways. However, because the sheer number of street openings exceeds Highways' ability to fulfill its statutory mandate to expeditiously restore the permanent pavement at all sites, Highways has designated a limited number of governmental and private entities to also do this work on its behalf. Highways devised a system of prescribed categories according to the permittee's responsibilities and the entity which will do the actual permanent repaving work. For example, code letters "A", "B" and "G" indicate that the

pavement will be restored for the permittee respectively by Highways, by the permittee, and by a utility company. Code letter "P", applicable only to licensed plumbers, indicated that the pavement restoration will be done by a specified contractor approved by Highways to do this work at street openings made by plumbers. Since Highways' regulations require that pavement restorations for licensed plumbers be performed by Highways or a Highways approved contractor, all permits issued to plumbers receive an "A" or "P" designation.

Highways' designation of a limited number of governmental and private entities to perform permanent pavement restorations on its behalf and its rules and regulations reflecting those designations are an exercise of its rule-making authority over pavement restoration (see Administrative Code of City of New York, § 693b-3.0) and its option, for reasons of economy, efficiency, or convenience, to contract with private industry for the rendition of work and services (see, e.g., *Matter of Corwin v Farrell,* 303 NY 61, 66-67; *Matter of Westchester County Civ. Serv. Employees Assn. v Cimino,* 58 AD2d 869, affd 44 NY2d 985). Highways' determination that only certain governmental and private entities may do permanent pavement restoration on its behalf, and, specifically, its resulting regulations requiring that permanent pavement restoration at all street openings made by licensed plumbers must be done by Highways or a paving contractor approved by Highways, appears reasonable. Respondents, responsible by statute for maintaining all roadways within the city in good repair, have established exacting standards for both the materials and methods used in pavement restoration work. Highways' regulations, for example, specify in detail the type and depth of asphalt used and the method of sealing it to pre-existing pavement. Unless these standards are observed, there is a danger that the roads will deteriorate. There is greater assurance that quality repaving will be done if only those entities with proven skills and the resources to remain responsible to repair any defects in their work are allowed to do the work. In order to

adequately monitor the quality of pavement restoration, the number of entities engaged in this activity must be limited.

Prior to 1981, the contractor approved to do repaving at sites opened by plumbers was the Contracting Plumbers Cooperative Restoration Corporation. In 1981, as a result of their publicly advertised solicitation of bid proposals to do this work, respondents designated the Paving Restoration Corporation of New York as the approved contractor (see *Contracting Plumbers Coop. Restoration Corp. v Ameruso,* 105 Misc 2d 951). Paving Restoration Corporation in its contract agreed, *inter alia,* to post a large performance bond, guarantee its work for two years, undertake research for improvements in pavement restoration, implement an equal employment opportunity program, and indemnify the city. Common sense and pragmatic considerations dictate that if each of the hundreds of plumbers and other businesses given street opening permits were allowed to do their own pavement restoration, there is no reasonable, possible way in which respondents could enforce their quality compliance requirements or insist upon the many advantageous conditions contained in the contract with the Paving Restoration Corporation. It *is* reasonable for respondents to select a limited number of entities with proven abilities and resources to do this work. The regulations and policy of Highways which result in precluding licensed plumbers from undertaking their own permanent pavement restorations do not appear to be irrational or to be a constitutionally infirm discrimination against plumbers (cf. *Matter of Ritter v City of Binghamton,* 80 AD2d 710, affd 54 NY2d 629).*

---

* Street opening permits, where the permittee performs his own restoration, are issued to (1) city agencies and contractors performing work for city agencies, (2) public utilities and public authorities and, (3) franchisees of the city. These entities, *limited in number,* are required by their franchise agreements or by law, to repair their street openings and do not present an overly burdensome administrative problem of supervision and control when defective restorations occur. The ability of Highways to control and monitor these entities so as to insure compliance is directly proportional to the fact that they are clearly limited in number. If the hundreds of licensed plumbers in the city were allowed to perform their own permanent pavement restoration, there would be no practical way that Highways could properly control and monitor the permanent restoration of street openings made by the plumbing industry. Parenthetically, it is noted that builders are not given permits whereby they can perform permanent pavement restorations, but are given builders' pavement *installation* permits in connection with the

With respect to the concurrence herein, the fact that a plumber is qualified to dig a hole does not *ipso facto* qualify him to fill it up. The circumstances and attendant requirements for filling up a hole in a city street are generically different from those pertaining to the creation of the hole. Further, the brief concurring opinion argues a view tending to demonstrate the lack of a pragmatic and rational basis for the administrative decision, an argument more aptly advanced by a dissent. In effect, it is acknowledged in the concurring opinion that the administrative determination of Highways has a rational basis, but such rational basis is characterized in the same opinion as partaking of a new version of "Alice in Wonderland," i.e., it is irrational in its rationality. If so, then the concurrence is, in reality, a dissent. Nevertheless, the concurrence clearly represents its status as a concurrence in the majority opinion. Accordingly, in the spirit of Alice in Wonderland, the apt observation of Humpty Dumpty is recalled: " 'When *I* use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean — neither more nor less.' 'The question is,' said Alice, 'whether you *can* make words mean so many different things.' 'The question is,' said Humpty Dumpty, 'which is to be master — that's all.' " (Carroll, Through the Looking Glass, ch 6).

Judgment, Supreme Court, New York County (PECORA, J.), entered September 24, 1981, which granted respondents' cross motion to dismiss petitioners' petition in the nature of an order to direct respondents to issue a code "B" street opening permit, should be affirmed, with costs and disbursements.

KUPFERMAN, J. P. (concurring). While I am in accord with the dissenting opinion, in view of the Court of Appeals determinations, such as *Matter of Organization to Assure Servs. v Ambach* (56 NY2d 518), *Matter of O'Rourke v Kirby* (54 NY2d 8), and *Matter of Pell v Board of Educ.* (34 NY2d 222, 231) that administrative determinations must be accorded comity where there is a rational basis for it, I reluctantly concur in the majority opinion.

issuance of certificates of occupancy for the premises constructed. As respondents' actions have a rational basis, the fact that petitioners believe they have a better system, to wit, the permitting of plumbers making their own permanent pavement restorations, does not detract from the propriety of respondent Highways' determination.

To suggest that a plumber is qualified to dig a hole but not qualified to fill it up is tantamount to writing the introduction to a new version of Lewis Carroll's Alice in Wonderland.

For a city agency, which admittedly cannot cope with the 750,000 potholes and street and sidewalk defects (see NYLJ, March 17, 1982, p 1, cols 2-3; see *Big Apple Pothole & Sidewalk Protection Committee v Ameruso,* 86 AD2d 986), to insist that it must make the determination as to who fills a "cut" in the street and that it cannot be a licensed plumber, is ludicrous. At best, it is the pot calling the kettle black and, at worst, it imposes an expensive burden on the people arranging for the "cut" in the street, which cost may well be passed on to the taxpayers of the City on whose behalf, theoretically, the respondents act.

CARRO, J. (dissenting). The rules and regulations whereby respondents retain the right to restore the pavements were arbitrarily used by the commissioner to deny the petitioners a code "B" permit. Respondents have not demonstrated any valid distinction which would allow contractors, utilities and other groups to restore pavement openings, while at the same time denying such right to licensed plumbers.

While the power to grant a permit vests in the discretion of the licensing authority, such discretion is not without limitations. It must not be arbitrary and capricious. (*Matter of Small v Moss,* 277 NY 501.) In this case, the refusal of the respondents to issue a code "B" permit was an improper exercise of discretion. No statute dealing with pavement opening or restoration restricts the issuance of a permit to any type or class or contains any restrictions on the issuance of code "B" permits to licensed plumbers. Petitioners' application for a code "B" permit was in full compliance with all listed qualifications and requirements.

The petitioners contend that during the course of their business they are required to obtain approximately 1,500 street opening permits each year and that as a result of the failure to grant them a code "B" permit, they will incur additional costs in the area of $450,000 in restoration fees charged to them under a code "A" permit schedule. These

costs must be passed on to the residents of the city. The city or its subcontractors often take months to restore pavements, leaving them in an open, unsafe condition, whereas appellants contend they could perform the work in a week's time. They aver that none of the individuals granted code "B" permits do their own repairing, as it is usually done by subcontractors. Petitioners would comply with the same strict requirements and specifications, file the same required bond and papers and be subject to the same supervision as other contractors who are permitted to do the work.

Here, respondents, to justify denial of a code "B" permit to petitioners, created a distinction between plumbing contractors and others who obtain "B" permits. The refusal to issue a "B" permit to the petitioners as opposed to utilities or other contractors working for the city is without a valid basis in law or fact. No evidence was shown that petitioners, who are in business over 50 years, have ever failed to meet their obligations or forfeited any bond or are any less fit than others to whom permits are routinely issued. If an applicant for a permit or license can show that he is a proper person to engage in a licensed business under the provisions of the licensing statute, the licensing officer may not arbitrarily impose limitations not contained in that statute. (*Matter of Picone v Commissioner of Licenses of City of N. Y.*, 241 NY 157; *Matter of Brooklyn Parking Corp. v Cannella*, 193 Misc 811.)

While the city is entrusted with responsibility for the keeping and repair of streets and may promulgate rules and regulations, those regulations are subject to constitutional scrutiny. The placing of a condition upon the issuance of a code "B" permit, excluding plumbers, while such permit is routinely issued to various other groups, is arbitrary and without a rational basis.

Accordingly, the granting of the city's cross motion to dismiss should be reversed, and respondent should be directed to issue petitioner a code "B" opening permit.

SULLIVAN and ROSS, JJ., concur with LUPIANO, J.; KUPFERMAN, J. P., concurs in an opinion; CARRO, J., dissents in a separate opinion.

Judgment, Supreme Court, New York County, entered on September 24, 1981, affirmed. Respondents shall recover of appellants $75 costs and disbursements of this appeal.