LOCAL 4501, COMMUNICATIONS WORKERS OF AMERICA, APPELLANT, *v.*
OHIO STATE UNIVERSITY ET AL., APPELLEES.

[Cite as Local 4501 *v.* Ohio State Univ. (1984), 12 Ohio St. 3d 274.]

(No. 83-1540—Decided August 1, 1984.)

*Mr. Francisco A. Garabis,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Philip R. Moots, Mr. Robert M. Weinberger* and *Ms. Elizabeth M. Stanton,* for appellees.

*Mr. Richard A. Green* and *Ms. Lisa E. Pizza,* urging affirmance for *amici curiae,* Department of Administrative Services and Inter-University Council of Ohio.

*Per Curiam.* The question presented in this case is whether the university's particular method of letting out independent service contracts is lawful in light of prevailing law and the parties' collective bargaining agreement.

In addressing this issue, we are guided by the principles set forth in *State, ex rel. Sigall,* v. *Aetna, supra.*

That case involved a taxpayer's suit to enjoin the expenditure of funds under a contract in which a private cleaning contractor was to perform certain custodial services over a three-year period. The record indicated that approximately seventy-five to eighty percent of all custodial work was performed by civil service employees hired directly by the university. The remaining work was let out under independent service contracts. The reason the university initiated this system was that it had experienced difficulty in maintaining a full custodial staff of its own despite affirmative measures to do so. No civil service employees were laid off as a result of the independent contracting, and the monetary savings to the university were substantial.

Citing the case of *Curtis* v. *State, ex rel. Morgan* (1923), 108 Ohio St. 292, 293, we noted that the purpose of the civil service laws and rules is to establish a merit system whereby appointments in public service are based upon demonstrated relative fitness rather than political considerations. In short, the goal is to remove politics from public service employment.

In light of this goal and under the facts presented in *Sigall,* we upheld the lawfulness of the Kent State University service contracts and adopted the following test to be applied in future cases:

" 'In the absence of proof of an intent to thwart the purposes of the civil service system, the board of trustees of a state university may lawfully contract to have an independent contractor perform services which might also be performed by civil service employees.' " *State, ex rel. Sigall,* v. *Aetna, supra,* at 314-315.

In applying this test to the instant matter, appellees argue that their sole motive for entering into the independent service contracts was the benign one of economics. According to them, this is sufficient to pass legal muster, and they therefore urge us to end our inquiry here.

We do not believe that this case may be so easily resolved. While it is true that the university is seeking, and succeeding in, the cutting of costs by contracting out custodial services, in so doing it is insidiously accomplishing another goal which is totally at odds with the purposes of the civil service system.

The distinguishing fact of this case is that the university has imposed a hiring freeze on the premise of lack of funds. According to the parties' stipulation of facts, there is no end in sight to this freeze. Attrition due to retirement, quitting and the like has naturally caused the total number of civil service employees to decline. The university has not formally abolished the vacant positions or filled them with new civil service employees. However, the work formerly performed by these individuals still must be done.

In response, the university continues to shift the remaining civil service employees into ever dwindling numbers of clusters. The remaining work is then let out under increasing numbers of independent service contracts. Slowly and inevitably, the civil service system is eroded and, ultimately, eradicated entirely. The result is that the university obtains a free hand to let out all services on a contract by contract basis without any moderation or restriction by the civil service system. Political activity is no longer restrained and the laudable purpose of the civil service system is sidestepped completely.

We do not believe that this is the result envisioned in *Sigall,* and we therefore refuse to sanction it in this case.

Accordingly, it is our finding that the particular manner in which the university let out service contracts in this case is contrary to Ohio law. Moreover, the university's actions violated the parties' collective bargaining agreement, as Article 30.1 of that agreement insured the university's right to contract for goods and services only to the extent that the same was not inconsistent with applicable law.

Appellant's remaining proposition of law concerns the procedure which the trial court followed in granting injunctive relief to appellees. In light of our findings above, this issue need not be addressed.

Hence, for all the foregoing reasons, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

C. Brown, J., concurs separately.

W. Brown, Locher and Holmes, JJ., dissent.

Clifford F. Brown, J., concurring. Although the holdings were not in favor of the civil service employees, nevertheless rationale contained in the following cases from other jurisdictions support the decision we reach today. *University of Nevada* v. *State Employees Assn.* (1974), 90 Nev. 105, 111, 520 P. 2d 602; *Ball* v. *Bd. of Trustees of State Colleges* (1968), 251 Md. 685, 692, 248 A. 2d 650; *Corwin* v. *Farrell* (1951), 303 N.Y. 61, 68, 100 N.E. 2d 135. Even though the hiring of a private contractor to replace civil service employees is done in good faith, it may not be done to evade the civil service, to effect a fundamentally sham reorganization, or as a scheme to oust civil service employees simply to make room for others.

William B. Brown, J., dissenting. Seldom have I seen such a hasty and shallow attempt to reach a preordained result. Because I am appalled by the shortsightedness of the majority opinion and the total lack of analysis therein, I am compelled to dissent.

This case presents the court with two issues. The first question is whether, under the applicable Ohio civil service laws, a state university may enter into a contract with a private contractor for the performance of services which could also be rendered by classified civil service employees. The second issue concerns the validity of the injunction issued by the trial court on behalf of the university. For the following reasons, I conclude that the university's actions were in accordance with law and that the granting of the injunction was appropriate.

The rule of law governing the situation has been clearly defined. In *State, ex rel. Sigall,* v. *Aetna* (1976), 45 Ohio St. 2d 308, 314-315 [74 O.O.2d 471], the following test for determining the legality of such contracts was set forth:

" 'In the absence of proof of an intent to thwart the purposes of the civil service system, the board of trustees of a state university may lawfully contract to have an independent contractor perform services which might also be performed by civil service employees.' "

Local 4501 first contends that the practice of contracting for custodial services constitutes a subterfuge to eradicate civil service at the university. However, as this court has previously stated, there is no provision in R.C. Chapter 124 commanding that particular services rendered the state must be performed exclusively by civil service employees. *State, ex rel. Sigall, supra,* at 313.

Local 4501 further argues that the awarding of contracts rather than employing additional civil service personnel demonstrates an intent by the university to thwart the purpose of the civil service system. This argument overlooks the fact that this court has clearly stated that the purpose of civil service is "* * * to eradicate the spoils system by protecting an employee

who has civil service tenure from being arbitrarily discharged and replaced with a political appointee." *Id.* at 314.

The facts of this case conclusively demonstrate that there has been no attempt to create a spoils system by discharging protected employees and replacing them with political appointees. A brief review of the stipulations of fact bears this out. No civil service employee has been reduced in classification and/or pay, laid off, or terminated as a result of the university contracting for services. All contracts for custodial services are let to the lowest bidder after competitive bidding. The successful bidders are responsible for their own hiring without approval or input by the university. The contracting-out policy is saving the university money. These stipulations defeat rather than advance the claim of unlawful intention as they establish an economic motive for the university's actions.

The majority's disingenuous attempt to distinguish the present case from *Sigall* is absurd. That there are minor factual differences between *Sigall* and the present case does nothing to alter the rule or its application. In *Sigall*, Kent State University was unable to recruit sufficient numbers of custodial employees. There is no evidence that Ohio State University has experienced similar difficulties. Additionally, there was a hiring freeze in the present case. Such factual distinctions are important in determining the lawfulness or unlawfulness of intent but do not alter the legal standard. Here, Local 4501 has failed to prove an unlawful intent on the part of the university.

Local 4501 further contends that the university's procedure violates their labor agreement. In support of this position Local 4501 relies on Article 30.1 of the agreement. This position is meritless.

Article 30.1 permits the university to contract for goods and services to the extent not inconsistent with applicable law. As discussed, *supra,* the university's practice of contracting for custodial services is in harmony with Ohio's civil service laws. Therefore, Article 30.1 is irrelevant to the instant dispute.

The next question is whether the trial court's injunction in this case is valid. Local 4501 asserts that the injunction is defective because the trial court did not state the reasons for its grant, because the university failed to show irreparable harm to justify its issuance, and because it deprives the union from exercising rights afforded by the collective bargaining agreement. These contentions are without merit.

Civ. R. 65(D) provides as follows:

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding upon the parties to the action, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the order whether by personal service or otherwise."

The order in question complies with the Civ. R. 65(D) requirements.

First, the order sets forth the basis for its issuance, *i.e.,* that the university had the right to contract out for services and that Local 4501 had the right to challenge contracts made for the purpose of establishing a spoils system or for political reasons. Next, the order is specific in its terms. The trial court's judgment entry fills two pages and explains in detail the university's right to contract out for custodial services. The injunction follows. Read together, there is sufficient specificity that the injunction was granted to enforce those rights explained in the preceding portion of the judgment entry. Finally, the order is not too vague to be understood. *State, ex rel. Fraternal Order of Police,* v. *Dayton* (1977), 49 Ohio St. 2d 219, 223 [3 O.O.3d 360]. This injunction is quite clear as to the acts restrained: institution of grievances, arbitration, requests, lawsuits or other proceedings involving the same parties and the same issues as determined herein unless Local 4501 can allege in good faith a political purpose or the establishment of a spoils system.

In concert with the present action, Local 4501 filed grievances to be arbitrated raising the same issues as those brought before this court. In addition, Local 4501, in response to paragraph eighteen of the university's counterclaim, admitted that the university has no adequate remedy at law. Therefore, it cannot now be claimed that the university failed to prove that it was entitled to the injunction.

It is true that Article 30.1 of the labor agreement reserves the right for Local 4501 to take appropriate legal action. But this clause cannot be construed to mean that the same issue can be relitigated over and over. A clause in a contract will not take precedence over a court's judgment and allow relitigation of claims already determined to be without merit. Therefore, the injunction issued by the trial court was proper.

For the foregoing reasons, I would affirm the judgment of the court of appeals.

LOCHER and HOLMES, JJ., concur in the foregoing dissenting opinion.