PERFORMING ARTS SCHOOL OF METROPOLITAN TOLEDO, INC. ET AL., APPELLEES, *v.* WILKINS, TAX COMMR., APPELLANT.

[Cite as *Performing Arts School of Metro. Toledo, Inc. v. Wilkins,* 104 Ohio St.3d 284, 2004-Ohio-6389.]

(No. 2003–0114—Submitted June 8, 2004—Decided December 8, 2004.)

O'CONNOR, J.

{¶ 1} Appellee Performing Arts School of Metropolitan Toledo, Inc. ("PAS") is a nonprofit corporation operating a community school under R.C. Chapter 3314. Since 1999, PAS has leased the property it occupies from Gomez Enterprises ("Gomez"), a for-profit limited partnership. The lease had an initial term of 39 months with a right to renew for two five-year terms. In addition to monthly rent of $5,000, the lease requires PAS to maintain the property, pay utilities, and

reimburse Gomez for real estate taxes and casualty insurance associated with the property.

{¶ 2} In January 2000, PAS petitioned the Tax Commissioner for an exemption from the real estate taxes. In its application, PAS acknowledged that Gomez held title to the property. Further, in response to a request in the application to attach a copy of the deed, PAS responded: "leased."

{¶ 3} In September 2001, nine months after the December 31, 2000 deadline for filing an exemption application for tax year 2000, an examiner in the commissioner's office raised a jurisdictional question because PAS is not the legal owner of the property. In response, Gomez added its name to PAS's application.

{¶ 4} Assuming jurisdiction, the commissioner denied the exemption because Gomez was using the property for profit. PAS appealed to the Board of Tax Appeals ("BTA"), which reversed the commissioner's decision. The BTA determined that the property was being used for an exempt purpose and was not being used for profit.

{¶ 5} The cause is now before this court on an appeal as of right. We have been asked to determine whether the buildings and land leased by a community school from a for-profit entity may be exempted from real property tax.

{¶ 6} Sua sponte, this court asked the parties to brief whether PAS, as a lessee rather than as a titleholder of the subject property, had standing to petition for a property-tax exemption. 101 Ohio St.3d 1464, 2004-Ohio-819, 804 N.E.2d 39. In administrative appeals such as this, "parties must meet strict standing requirements in order to satisfy the threshold requirement for the administrative tribunal to obtain jurisdiction." *State ex rel. Tubbs Jones v. Suster* (1998), 84 Ohio St.3d 70, 77, 701 N.E.2d 1002, fn. 4. Because we determine that PAS lacked standing to petition the commissioner for an exemption, the issue initially raised on appeal is moot.

{¶ 7} The statutory requirements with which PAS had to comply in filing an application for exemption are set forth in a former version of R.C. 5715.27(A):

{¶ 8} "(A) The *owner* of any property may file an application with the tax commissioner, on forms prescribed by the commissioner, requesting that such property be exempted from taxation and that unpaid taxes and penalties be remitted as provided in division (B) of section 5713.08 of the Revised Code." (Emphasis added.) 1990 Am.Sub.S.B. No. 382, 143 Ohio Laws, Part I, 1692. (The current version refers to an exception in R.C. 3735.67 but is otherwise the same.)

{¶ 9} Our threshold inquiry is whether a lessee such as PAS is an "owner" under R.C. 5715.27(A). The term "owner" is not defined for the purposes of R.C. 5715.27.

{¶ 10} In *Grieser v. Huntington Natl. Bank of Columbus* (1964), 176 Ohio St. 291, 294, 27 O.O.2d 202, 199 N.E.2d 556, we proposed that "[t]he word, 'owner,' as used in various statutes is one of flexible meaning* * *." We were referring, however, to defunct statutes spanning scores of years and various topics, such as the duty to vent natural gas, the duty to provide protective measures for elevators, and the duty to provide fire exits from upper floors of buildings. Accordingly, *Grieser*'s generalization does not necessarily justify multiple definitions of "owner" within the context of a current chapter of the Revised Code that deals exclusively with property taxation.

{¶ 11} Though several of our cases suggest flexibility in the meaning of "owner," none concerns taxation of real property. In *Baltimore & Ohio RR. Co. v. Walker* (1888), 45 Ohio St. 577, 16 N.E. 475, syllabus, we held, "A railroad company which has the possession and control of a railroad in this state, and is managing and operating the same as the lessee thereof, is one 'owning the track' of such railroad * * *" for purpose of determining liability for the cost of maintaining the tracks. In *Choteau v. Thompson* (1853), 2 Ohio St. 114, 123, 1853 WL 72, we defined "owner" to include a lessee, as well as a holder of property in fee simple, for the purpose of a mechanic's lien. Moreover, in *Iroquois Co. v. Meyer* (1909), 80 Ohio St. 676, 89 N.E. 90, we defined "owner" to include a lessee in the context of a gaming statute. Though "owner" certainly has conveyed different meanings throughout our legislative history and across different chapters of the Revised Code, these cases support no other proposition. The appropriate definition of "owner," as used specifically in R.C. 5715.27, is an entirely different matter.

{¶ 12} In *Victoria Plaza Ltd. Liab. Co. v. Cuyahoga Cty. Bd. of Revision* (1999), 86 Ohio St.3d 181, 712 N.E.2d 751, we held that only a holder of legal title owns real property for the purpose of standing to file a tax valuation complaint under R.C. 5715.19. In rejecting an argument analogous to that presented by PAS, we stated, "[T]o be the *owner* of real property, the person must hold legal title to the property, not simply an equitable interest in the property." (Emphasis added.) Id., 86 Ohio St.3d at 183, 712 N.E.2d 751. We concluded that "the owner of an equitable interest in real property does not have standing to file a complaint." Id.

{¶ 13} Though *Victoria Plaza* does not address the specific question at issue herein, it addresses the same term within the same chapter of the Revised Code. We choose to apply a consistent definition within R.C. Chapter 5715. Accordingly, "owner" as used in R.C. 5715.27 refers only to a legal title holder of the real property for which a tax exemption is sought.

{¶ 14} Application of our rules of statutory construction buttresses our holding. A statutory term susceptible of more than one definition should be afforded its

plain and ordinary meaning. *Kimble v. Kimble*, 97 Ohio St.3d 424, 2002-Ohio-6667, 780 N.E.2d 273, ¶ 6; R.C. 1.42. In the context of real property, we have consistently held that the plain and ordinary meaning of "owner" is the holder of legal title. See *Victoria Plaza Ltd. Liab. Co.*, 86 Ohio St.3d at 183, 712 N.E.2d 751; *State ex rel. Multiplex, Inc. v. S. Euclid* (1973), 36 Ohio St.2d 167, 65 O.O.2d 383, 304 N.E.2d 906; and *Bloom v. Wides* (1955), 164 Ohio St. 138, 57 O.O. 132, 128 N.E.2d 31. In *Bloom*, we stated, "Where the term 'owner' is employed with reference to land or buildings, it is commonly understood to mean the person who holds the legal title." Id., 164 Ohio St. at 141, 57 O.O. 132, 128 N.E.2d 31. *State ex rel. Multiplex* and *Victoria Plaza* follow this holding. Moreover, within our lexicon, we do not commonly regard a lessee of real property as the owner. Though the lessee holds certain property interests, we regard the legal title holder as the owner, from whom a lessee acquires an inferior interest. Thus, because the plain and ordinary meaning of "owner" is a legal title holder, we afford it this meaning in R.C. 5715.27.

{¶ 15} PAS is a lessee and does not hold legal title to the property at issue. Thus, PAS is not an "owner" pursuant to R.C. 5715.27, and it lacked standing to petition the commissioner for a tax exemption. Accordingly, we reverse the BTA's decision and enter judgment in favor of the commissioner.

{¶ 16} Having determined that PAS lacked standing, we must resolve whether Gomez's joining PAS's petition cured the jurisdictional defect.

{¶ 17} The time limits for exemption are set forth in R.C. 5715.27(F), which provides: "An application for exemption * * * shall be filed prior to the thirty-first day of December of the tax year for which exemption is requested * * *."

{¶ 18} Thus, an application for exemption for tax year 2000 had to be filed prior to December 31, 2000. The owner of the property, Gomez, was not added as a party to PAS's application until September 2001, long after the filing deadline for tax year 2000.

{¶ 19} In *Am. Restaurant & Lunch Co. v. Glander* (1946), 147 Ohio St. 147, 150, 34 O.O. 8, 70 N.E.2d 93, paragraph one of the syllabus, we stated, "Where a statute confers the right of appeal, adherence to the conditions thereby imposed is essential to the enjoyment of the right conferred." Moreover, "[i]t must be conceded that the filing of the required notice of appeal must be within the time prescribed by the statute. * * * Any of the other statutory requirements as to the notice would be a nullity if, subsequent to the time prescribed for perfection of the appeal, amendment of the notice, by supplying the statements required by the statute, would be permitted; for that would be equivalent to filing the required notice of appeal after the expiration of the time limit prescribed therefor." Id., 147 Ohio St. at 151, 34 O.O. 8, 70 N.E.2d 93.

{¶ 20} While the right to petition an administrative agency, rather than the right to appeal, is at issue here, the same jurisdictional concept is presented. Accordingly, *Am. Restaurant & Lunch Co.*'s reasoning is persuasive, and lack of standing is not cured by an owner's joining an application for tax exemption after the deadline for filing the application has passed. Because Gomez joined PAS's application after the deadline for tax year 2000 had passed, PAS remains without standing.

Decision reversed.

MOYER, C.J., F.E. SWEENEY and O'DONNELL, JJ., concur.

RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., dissent.

---

**LUNDBERG STRATTON, J., dissenting.**

{¶ 21} I respectfully dissent. I would not read R.C. 5715.27 as restrictively as the majority does. Instead, I would hold that a lessee who is occupying and controlling property under a written lease may qualify as an owner for purposes of standing to file an application for tax exemption of that property under R.C. 5715.27 if the lessee bears many of the indicia of ownership. That is, a lessee who maintains the leased property and pays, either directly or by reimbursement to the lessor, the cost of utilities, insurance, and real property taxes should be considered an owner for purposes of R.C. 5715.27.

{¶ 22} In various contexts, we have construed "owner" to include a lessee. In *Baltimore & Ohio RR. Co. v. Walker* (1888), 45 Ohio St. 577, 585, 16 N.E. 475, we recognized that "owner" encompasses one who possesses, in addition to one who owns the fee simple.

{¶ 23} "An owner is not necessarily one owning the fee-simple, or one having in the property the highest estate it will admit of. One having a lesser estate may be an owner, and indeed, there may be different estates in the same property vested in different persons and each be an owner thereof." Id. Therefore, we determined that the railroad company, which had possession and control of a railroad and managed and operated it as the lessee, was the owner of the tracks of that railroad. Id., paragraph one of the syllabus.

{¶ 24} In *Choteau v. Thompson* (1853), 2 Ohio St. 114, 123, we held that the word "owner" in a mechanic's lien statute was not limited to the owner of the fee, but also included a lessee. Likewise, in *Iroquois Co. v. Meyer* (1909), 80 Ohio St. 676, 89 N.E. 90, we held that "owner" as used in a certain gaming statute included a lessee as well as the owner. And in *Grieser v. Huntington Natl. Bank of Columbus* (1964), 176 Ohio St. 291, 294, 27 O.O.2d 202, 199 N.E.2d 556, the court stated: "The word, 'owner,' as used in various statutes is one of flexible

meaning, * * * and it may vary from an absolute proprietary interest to a mere possessory right."

{¶ 25} The majority distinguishes these cases on the basis that the word "owner" was not used in the context of real property. On the other hand, these cases offer support for a flexible meaning of the word in various situations. Our decisions clearly hold that "owner" is not synonymous with "legal titleholder."

{¶ 26} Furthermore, the Restatement of the Law, Property (1944) 25, Section 10, states, "The word 'owner,' as it is used in this Restatement, means the person who has one or more interests." Comment *c* states:

{¶ 27} "The same usage as to the words 'owner' and 'own' applies both in this Restatement and as a matter of popular usage to any smaller aggregate of interests. Thus a person who owns an easement or an estate for years may part with some of the interests that compose the easement or estate for years and his relation to the easement or the estate for years will still be termed ownership."

{¶ 28} Unlike R.C. 5715.19, which we interpreted in *Victoria Plaza Ltd. Liab. Co. v. Cuyahoga Cty. Bd. of Revision* (1999), 86 Ohio St.3d 181, 712 N.E.2d 751, R.C. 5715.27 does not require that the "owner" filing an application for tax exemption be an owner of taxable real property. I believe that the use of the term "owner" in the statute does not, without more, characterize which of the many possible ownership interests is meant by the statute. By stating that the owner of "any" property may file for an exemption but not defining or limiting the term "owner," I believe that the General Assembly has not limited the term to a particular kind of owner, such as the owner of the legal title to the fee simple. If the General Assembly did not intend that only the owner of the legal title to the fee-simple estate file an exemption application, then I invite the General Assembly to clarify the statute.

{¶ 29} Nevertheless, I do not believe that the General Assembly intended to give standing to just any "owner" to file an application for exemption under R.C. 5715.27. Since the use of property is a criterion in considering a claim for tax exemption, I believe that the user of the property may sometimes also be recognized as the owner. "A generally recognized principle is that one who is in possession and control of property and is occupying, managing and operating the same as lessee is often to be treated as the owner thereof." *Carney v. Cleveland* (1962), 173 Ohio St. 56, 58, 18 O.O.2d 256, 180 N.E.2d 14. Likewise, in *Cooper v. Roose* (1949), 151 Ohio St. 316, 39 O.O. 145, 85 N.E.2d 545, paragraphs one and two of the syllabus, this court held: "Occupation and control of premises by a party are attributes of their ownership. * * * A lease ordinarily transfers those attributes of ownership to the lessee."

{¶ 30} Under the written lease, PAS not only has possession and control of the property for which it is seeking exemption, but it is also responsible for

maintenance and utilities and for reimbursement of the lessor for the cost of casualty insurance and real property taxes. Therefore, I would find that PAS is the "owner" of the leased property for the purpose of standing to file an application for exemption in its own name under R.C. 5715.27. I believe that the decision of the Board of Tax Appeals is reasonable and lawful, and I would affirm it.

RESNICK and PFEIFER, JJ., concur in the foregoing dissenting opinion.

---

Eastman & Smith Ltd., Amy J. Borman, M. Charles Collins, and Graham A. Bluhm, for appellees.

Jim Petro, Attorney General, and Richard C. Farrin, Senior Deputy Attorney General, for appellant.