CINCINNATI GOLF MANAGEMENT, INC. ET AL., APPELLANTS, *v.* TESTA,

TAX COMMR., APPELLEE.

[Cite as *Cincinnati Golf Mgt., Inc. v. Testa,*

132 Ohio St.3d 299, 2012-Ohio-2846.]

*Sales and use tax—Exemption for purchases by political subdivision—Claim for*
*exemption by independent contractor performing management services for*
*city—Standing—Agency.*

(No. 2010-0896—Submitted June 6, 2012—Decided June 27, 2012.)

APPEAL from the Board of Tax Appeals, No. 2007-M-1411.

_____

**Per Curiam.**

**{¶ 1}** In this case, the appellants, Cincinnati Golf Management, Inc.
("CGMI") and the city of Cincinnati, challenge a consumer's use-tax assessment
issued by the tax commissioner against CGMI. The commissioner assessed tax
with respect to purchases that the commissioner deemed to be taxable under the
sales- and use-tax laws of Ohio. CGMI and the city assert that because CGMI
made the purchases as an agent for the city of Cincinnati, the purchases were
exempt as "[s]ales to * * * [a] political subdivision[ ]" pursuant to R.C.
5739.02(B)(1).

**{¶ 2}** Both the tax commissioner and the Board of Tax Appeals ("BTA")
found that CGMI, acting in its capacity as an independent contractor under the
management agreement between it and the city, did not qualify as an agent of the
city with respect to the sales at issue. Accordingly, the BTA upheld the
assessment, and CGMI and the city have appealed.

**{¶ 3}** On appeal, CGMI and the city assert that their arrangements
satisfied the elements of agency for purposes of R.C. 5739.02(B)(1) as a matter of

law. The appellants also argue that purchases by CGMI constituted sales to the city under the sales-tax law's broad definition of sale. We disagree, and we therefore affirm the decision of the BTA.

## I. Factual Background

{¶ 4} The city of Cincinnati owns seven golf courses that were traditionally managed by the Recreation Commission, a department of the city. In the 1990s, the city undertook an effort to streamline city services by engaging in "managed competition," a term that refers to soliciting bids and hiring a contractor in order to achieve efficiencies that will save revenue for the city and its taxpayers. After engaging another contractor for a period, the city entered into a management contract on January 21, 2003, with Billy Casper Golf Management, Inc. CGMI is a subsidiary that carries out Billy Casper Golf Management's obligations under the contract. CGMI did not pay sales or use tax with respect to otherwise taxable purchases. The tax agent stated in the audit remarks that CGMI's reason for not paying was that the purchases were "made on behalf of the city and [were] therefore exempt from tax."

{¶ 5} The record contains an opinion of the city solicitor rendered to the Recreation Commission that CGMI could avail itself of the city's sales-tax exemption, along with a form exemption certificate executed by the city's purchasing agent. The solicitor addressed purchases of tangible property (no services were mentioned) and expressed the view that such purchases were covered by the city's exemption to the extent that the city reimbursed the cost and took title to the items purchased. Although the record does not explicitly establish the fact, some form of exemption certificate was presumably furnished to CGMI's vendors in order to assure them that CGMI or the city would bear liability if the exemption was found not to apply. *See* R.C. 5739.03.

{¶ 6} The Ohio Department of Taxation initiated a general tax audit of CGMI that narrowed to a purchase audit for purposes of determining sales- and

use-tax liability of the entity as a consumer for the period January 1, 2002, through June 30, 2005. The department concluded that CGMI's purchases were taxable because there was insufficient evidence to establish that CGMI acted as an agent of the city with respect to the purchases. Accordingly, the department issued an assessment on December 9, 2005, for $167,708.28 of unpaid tax, $11,757.46 of preassessment interest, and a penalty of $25,156.24, for a total of $204,621.98. Upon consideration of CGMI's petition for reassessment, the department upheld the assessment by final determination issued on September 14, 2007, with the exception of a reduction of penalty: the department partially remitted the penalty, reducing it from 15 percent to 5 percent of the tax owed.

{¶ 7} CGMI and the city filed a joint notice of appeal from the final determination to the BTA. At the BTA hearing, CGMI and the city presented the testimony of two witnesses and offered eight exhibits. The tax commissioner presented the testimony of a tax agent and offered two exhibits of his own in addition to the statutory transcript.

{¶ 8} On April 20, 2010, the BTA issued a decision that upheld the final determination of the tax commissioner. With respect to the question whether CGMI could claim the city's exemption from paying sales and use tax, the BTA first found that CGMI had not established its status as an agent under the control test. BTA No. 2007-M-1411, at 6, 2010 WL 1652971 (Apr. 20, 2010).

{¶ 9} Second, the BTA held that because there was "no evidence that [CGMI] pledged the city's credit when purchasing items or hiring employees," and because there were " 'no copies of purchase agreements wherein the taxpayer holds itself out as the designate [sic] agent of the city,' " CGMI was not an agent of the city. *Id*. at 9, quoting the tax agent's audit remarks. As legal authority for this point, the BTA cited the Ninth District's decision in *Russell Harp of Ohio, Inc. v. Lindley*, 9th Dist. No. 9859, 1981 WL 3979 (May 13, 1981).

**{¶ 10}** Finally, the BTA considered other issues that have not been pursued on appeal.

**{¶ 11}** CGMI and the city jointly appealed from the BTA's decision with regard to the agency finding, and we now affirm.

## II. The tax commissioner's motion to dismiss is denied as moot

**{¶ 12}** In a motion filed on February 23, 2012, the tax commissioner for the first time in these proceedings urges that the city of Cincinnati be dismissed as a party because the city had no standing to challenge the original assessment. The commissioner points out that the assessment was issued against CGMI as the taxpayer rather than against the city and that the statutes appear to contemplate a remedy for the assessee itself but not for other persons who may face economic consequences from the issuance of assessment. We hold that the presence of two particular circumstances in this case makes the commissioner's motion moot.

**{¶ 13}** First, the presence of the city as a party in this litigation does not affect the subject-matter jurisdiction of either the BTA or this court. To be sure, lack of standing in administrative proceedings is a jurisdictional defect if no proper party has timely joined. *Performing Arts School of Metro. Toledo, Inc. v. Wilkins*, 104 Ohio St.3d 284, 2004-Ohio-6389, 819 N.E.2d 649. But CGMI, whose standing is undisputed, joined with the city in common notices of appeal both at the BTA and at the court. It follows that there is no jurisdictional necessity to determine the city's standing in this case. *Accord Miller v. Blackwell*, 348 F.Supp.2d 916, 920 (S.D.Ohio 2004) ("If the Court determines that any one of the Plaintiffs has standing, the Court has jurisdiction and may proceed with the case"), citing *Carey v. Population Servs. Internatl.*, 431 U.S. 678, 682, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).[1]

---

1. The absence of a jurisdictional necessity to decide standing also raises a serious threshold issue whether the commissioner may assert the standing issue at all in light of his failure to object at the BTA and to pursue a cross-appeal to the court. Although we have plenary jurisdiction over issues

**{¶ 14}** Second, the city has not acted as a party independently from CGMI, but has instead acted only in direct concert with its contractor. As a result, denying standing to the city would not lead to excluding any evidence that has been offered or to striking any briefs or arguments advanced in favor of granting the tax exemption. There is accordingly little if any practical significance, and no discernable prejudice to the commissioner, if the standing issue remains unaddressed at this late juncture.

**{¶ 15}** In sum, we hold that in light of all of the circumstances in which the issue is presented to us through the commissioner's belated motion, the issue should be regarded as moot. *Accord State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, 844 N.E.2d 335, ¶ 60 (issue of a claimant's standing may be rendered moot when the error did not prejudice any party and when the disposition of the case would not be affected by the disposition of the standing issue); *State ex rel. Kirk v. Burcham*, 82 Ohio St.3d 407, 409, 696 N.E.2d 582 (1998), fn. 2 (resolution of a merits issue in an appeal rendered the issue of an appellant's standing moot).

### III. Analysis of the exemption claim

**{¶ 16}** R.C. 5739.02(B)(1) exempts from sales and use taxation "[s]ales to * * * political subdivisions," and the appellants assert that CGMI's purchases fall within that exemption. In a claim for tax exemption, the "onus is on the taxpayer to show that the language of the statute 'clearly express[es] the exemption' in relation to the facts of the claim." *Anderson/Maltbie Partnership v. Levin*, 127

---

that affect our jurisdiction, a lack of standing on the city's part would not, as discussed, deprive either the BTA or the court of jurisdiction. *Compare Elyria v. Lorain Cty. Budget Comm.*, 117 Ohio St.3d 403, 2008-Ohio-940, 884 N.E.2d 553, ¶ 13 (jurisdictional issue may be considered even if not raised) *with Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, 118 Ohio St.3d 330, 2008-Ohio-2454, 889 N.E.2d 103, ¶ 12-13 (issue precluded if not raised by specification of error in cross-appeal). And even if the commissioner had filed a notice of appeal to the court, it might prove futile to characterize the BTA's tolerance of the city as a party as error, given the absence of objection by the commissioner below.

Ohio St.3d 178, 2010-Ohio-4904, 937 N.E.2d 547, ¶ 16, quoting *Ares, Inc. v. Limbach*, 51 Ohio St.3d 102, 104, 554 N.E.2d 1310 (1990). CGMI claimed the exemption as an agent of the city of Cincinnati with respect to the purchases.

{¶ 17} Although the statute does not expressly state that an agent may claim the principal's exemption, we agree that the exemption may apply to a transaction in which an entity acts as a purchase agent of the city—indeed, the state and its subdivisions typically do act through agents. In particular, we reject the tax commissioner's reliance on cases involving federal immunity from state taxation such as *NLO, Inc. v. Limbach*, 66 Ohio St.3d 389, 613 N.E.2d 193 (1993). Those cases differ because, unlike state-law exemptions, "a finding of constitutional tax immunity requires something more than invocation of traditional agency notions." *United States v. New Mexico*, 455 U.S. 720, 736, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982). Moreover, contrary to the commissioner's assertion, we observed in connection with denying exemption in *NLO* that "neither the contract between NLO and [the federal agency] nor the purchase orders * * * formally designate NLO as [the federal agency's] 'purchasing agent.' " *Id*. at 395.

{¶ 18} Thus, to the extent that this case presents a legal issue (and both parties agree that it does), the inquiry focuses on what characteristics a contractual relationship must possess to constitute an agency relationship that will bring the transactions at issue within R.C. 5739.02(B)(1)'s requirement that the sale be one that has been made "to" Cincinnati.

{¶ 19} As a final preliminary, we note that this case directly involves the use tax rather than the sales tax. We conclude, however, that the applicability of the political-subdivision exemption under the circumstances does not differ under the use-tax provisions from the sales-tax result. That is so because the scope of the exemption under the use-tax chapter is defined in terms of the sales-tax exemption. R.C. 5741.02(C)(2) (with a narrow exception, the use tax does not

extend to the use of tangible property or services "the acquisition of which, if made in Ohio, would be a sale not subject to the tax" imposed by the sales-tax chapter).

## A. The political-subdivision exemption does not apply, because the city was not a party to the purchase transactions

### 1. CGMI and the city had the burden to show that CGMI was empowered to bind the city as a purchaser

{¶ 20} "Agency" has been defined as " 'a consensual fiduciary relationship between two persons where the agent has the power to bind the principal by his actions, and the principal has the right to control the actions of the agent.' " *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 744, 680 N.E.2d 161 (10th Dist.1996), quoting *Funk v. Hancock*, 26 Ohio App.3d 107, 110, 498 N.E.2d 490 (12th Dist.1985), citing *Haluka v. Baker*, 66 Ohio App. 308, 312, 34 N.E.2d 68 (9th Dist.1941). Despite the extensive discussion of the control test by the BTA and the parties, we conclude that the proper focus is on whether or not CGMI had an agent's actual authority to bind Cincinnati as the purchaser in the transactions at issue.

{¶ 21} In particular, the reliance on *Hanson v. Kynast*, 24 Ohio St.3d 171, 494 N.E.2d 1091 (1986), is inappropriate. *Hanson* was a tort case in which the plaintiff sought to hold a university liable for his injuries on the theory that the person who directly caused the plaintiff's injuries—a student lacrosse player— was, by virtue of the control exercised by the coach, acting as the university's employee or agent. *Hanson* embodies the tort-law principle of vicarious liability, pursuant to which a relationship—sometimes labeled "agency"—between *A* and *B* makes *A* liable, vicariously, for wrongs perpetrated by *B*. Fleming James Jr., *Vicarious Liability*, 28 Tulane L.Rev.161, 168 (1954) (where the employer exercises control over its employees, the "[p]ressure of legal liability on the employer * * * is pressure put in the right place to avoid accidents"). Other cases

relied upon by Golf Management also involve vicarious-liability tort claims. *E.g.*, *Baird v. Sickler*, 69 Ohio St.2d 652, 433 N.E.2d 593 (1982) (medical negligence); *Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill.App.3d 1051, 349 Ill.Dec. 269, 946 N.E.2d 463 (2011) (wrongful-death and negligent-operation claims). Equally inapposite are cases involving workers' compensation liability, in which the issue of control determines whether the workers' compensation law applies in a particular situation. *E.g.*, *Bostic v. Connor*, 37 Ohio St.3d 144, 146, 524 N.E.2d 881 (1988); *Walker v. Lahoski*, 9th Dist. No. 19293, 1999 WL 548978 (July 28, 1999).

{¶ 22} Instead of focusing on the control test, the Ninth District considered and rejected an exemption claim very similar to CGMI's by considering a contractor's role as purchaser. In *Russell Harp of Ohio, Inc. v. Lindley*, 9th Dist. No. 9859, 1981 WL 3979 (May 13, 1981), Harp operated parking garages that belonged to the city of Akron and attempted to avail itself of Akron's sales- and use-tax exception, just as CGMI and the city seek the benefit of Cincinnati's exemption in this case. In rejecting the claim, the appeals court reasoned that "regardless of the degree to which Akron reserved the right to control the actions of [the contractor] Harp," the "heart of the matter" lay in the fact that "the specific purchases were made solely by Harp, billed to Harp, and paid by check out of Harp's Washington office." *Id*. at *2. Accordingly, the Ninth District held it to be dispositive that "the arrangement contemplated by the parties, as set forth in the contract, is that Harp is to purchase in its own name, and on its own credit, all the materials required, and that Akron is obligated to reimburse Harp for only those purchases which are approved by Akron." *Id*.

{¶ 23} We believe that *Russell Harp* adopts the correct approach to the type of claim at issue in the present case, and we conclude that the issue before us concerns the agency doctrine of authority. A sale is a sale to a political subdivision under R.C. 5739.02(B)(1) only if the political subdivision is in

actuality the purchaser that is consummating the sale by means of its agent—with the city thereby assuming and bearing the primary and essential liability to the vendor (rather than its agent doing so). Indeed, one of the most important features of the agency relationship is that *the principal itself becomes a party* to contracts that are made on its behalf by the agent. 2 Restatement of the Law 3d, Agency, Sections 6.01 and 6.02 (when an agent makes a contract on behalf of a disclosed principal or an unidentified principal, the principal is a party to the contract) and 6.03 (when there is actual authority but an undisclosed principal, the principal is a party unless the contract provides otherwise) (2006).

*2. The record does not show that CGMI possessed actual authority to bind the city to the purchases*

**{¶ 24}** As the cited Restatement provisions make clear, binding the principal to agent-made contracts typically requires that the agent make the contracts on the principal's behalf *with actual authority to do so*. The Restatement defines "actual authority" in terms of an expression of intent by the principal that the agent act on behalf of the principal, along with the understanding of the agent. 1 Restatement of the Law 3d, Agency, Section 3.01. *See Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 574, 575 N.E.2d 817 (1991), quoting *Stevens v. Frost*, 140 Me. 1, 7, 32 A.2d 164 (1943) (" 'Express authority is that authority which is directly granted to or conferred upon the agent or employee in express terms by the principal, and it extends only to such powers as the principal gives the agent in direct terms; and the express provisions are controlling where the agency is expressly conferred' ").

**{¶ 25}** In this case, the contract between the parties expressly disclaims agency with respect to any of the activities that CGMI conducts pursuant to its terms. Thus, there is no actual or express authority to bind the city to purchases made by CGMI.

{¶ 26} Beyond that disclaimer, the management contract's way of defining the relationship between CGMI and the city does not appear to be consistent with imputing purchase-agent status to CGMI. The audit papers identify as significant items in the assessment (1) the purchase of payroll services, (2) the purchase of tangible property such as tables, chairs, and televisions, (3) the cost of using a computerized golf booking system, (4) the purchase of cleaning and landscaping services and supplies, and (5) the leasing of motor vehicles and turf equipment. As for the management contract, it identifies a broad category of "Golf Course Expenses" to be reimbursed based on the weekly submission of invoices and "Non-Payroll Expense Reports," which are to include "vendor's [sic] names, materials or services bought[,] method of payment and amount paid to vendor." The reimbursement occurs within a week after "review by the [City Recreation] Commission's Accountant and the City's Account and Audit Office."

{¶ 27} Nothing about these express contractual provisions offers support to the notion that CGMI could directly bind the city when it made the purchases at issue. Indeed, with respect to the purchases, it appears that the management contract is intended to be more a liability barricade between the city and the vendors than a liability conduit.

### 3. The incidence of the sales and use tax is not on the city of Cincinnati in the transactions at issue

{¶ 28} Beyond agency, CGMI and the city argue that under the broad definition of "sale" at R.C. 5739.01(B), purchases by CGMI pursuant to the facilities-management contract are in substance sales to the city itself. According to this argument, CGMI's purchases should be viewed as the means by which the city itself makes purchases, and the transactions are therefore "sales" to the city because "sale" encompasses transactions for consideration "by any means whatsoever." We disagree.

**{¶ 29}** Apart from the agency theory just discussed, the case law forecloses any attempt to construe the purchases as sales to the city. That is so because we have held that absent a purchase-agent relationship, a sales- and use-tax exemption becomes available based on the legal incidence of the tax and that incidence falls on the person or entity that the statutes deem to be the consumer for purposes of the transactions at issue. *See Huntington Natl. Bank of Columbus v. Porterfield*, 23 Ohio St.2d 131, 136-137, 263 N.E.2d 227 (1970); *Akron Home Med. Servs., Inc. v. Lindley*, 25 Ohio St.3d 107, 495 N.E.2d 417 (1986). As the tax commissioner points out, R.C. 5739.01(D)(3) deems a facilities-management contractor to be the consumer of items purchased "for use in connection with the performance of such contract, regardless of whether title to any such property vests in the contractee." Thus, the statutes unequivocally establish that CGMI is the consumer in the transactions at issue, and therefore the sales at issue are "sales to" CGMI, not to the city.

### 4. CGMI and the city are not seeking a vicarious exemption

**{¶ 30}** The BTA held in part that CGMI "cannot claim a vicarious tax exemption due to the tax-exempt status of its consumer." BTA No. 2007-M-1411 at 8, 2010 WL 1652971. The tax commissioner renews this argument by contending that the claim for exemption as agent for the city of Cincinnati constitutes the type of claim for vicarious exemption that the court has rejected in the past.

**{¶ 31}** We disagree. The cases the BTA and the commissioner cite are inapposite to the agency issue raised by CGMI and the city in this case. Paradigmatic of a vicarious-exemption claim is *OCLC Online Computer Library Ctr., Inc. v. Kinney*, 11 Ohio St.3d 198, 464 N.E.2d 572 (1984). In that case, OCLC was a nonprofit entity that supplied library-catalogue information concerning member libraries. OCLC argued that its headquarters was exempt

from real property taxation because it was used exclusively for charitable purposes pursuant to R.C. 5709.12 and 5709.121.

{¶ 32} OCLC argued for an "entitlement to a charitable exemption based upon the charitable status of the institutions which it contractually serves." *Id.* at 200. We rejected that claim. Relying on *Joint Hosp. Servs. v. Lindley*, 52 Ohio St.2d 153, 370 N.E.2d 474 (1977) (involving a sales- and use-tax assessment), we characterized OCLC's claim as one for "vicarious charitable exemption" and held that OCLC could not "rel[y] upon the charitable status of its customers as the basis for seeking a charitable exemption." *Id.* at 201. Unlike the present case, the taxpayers in both *OCLC* itself and in *Joint Hosp. Servs.* were not seeking to avail themselves of the other entities' exemptions; instead, the taxpayers in those cases were seeking a brand-new exemption in addition to and derivative of its customers' exemptions.

{¶ 33} By contrast, CGMI and the city seek nothing other than an entitlement on CGMI's part to use *Cincinnati's own exemption.* The cited cases do not address such a claim.[2]

## B. Promoting "managed competition" by tailoring a tax exemption is a task for the General Assembly, not the courts

{¶ 34} CGMI and the city's second proposition of law expresses the aspiration that because "[m]anaged competition promotes efficient government,"

---

2. The BTA also relied on *Pittsburgh & Conneaut Dock Co. v. Limbach*, 18 Ohio St.3d 320, 481 N.E.2d 579 (1985). In that case, the taxpayer contested a sales- and use-tax assessment in part by asserting the exemption for items used directly in the rendition of a public-utility service. The taxpayer was an affiliate of the railroad that owned certain docking facilities, which the taxpayer leased from the railroad in order to use the facilities in support of the owner's operations. Although the circumstances might have been conducive to considering an agency argument similar to the one CGMI asserts in this case, no such contention was advanced either at the BTA or at the court. Instead, the court considered and rejected two arguments that the taxpayer did advance: that the taxpayer itself could qualify as a public utility and that it could claim the exemption even though it was not a public utility. *Id.* at 322-323.

the use of a contractor such as CGMI by the city of Cincinnati "should not result in a new tax."

**{¶ 35}** By "new tax" the appellants apparently refer to the tax consequence of outsourcing the operation of city golf courses to CGMI: tax-exempt purchases formerly made by Cincinnati's recreation department must now be made by the private contractor CGMI, a change that subjects those transactions to sales and use taxation. But contrary to the appellants' suggestion, such a tax consequence is often incident to a restructured business transaction and does not furnish a basis for judicially expanding the scope of exemption. Quite simply, our duty is to apply the statute that the General Assembly wrote, not to write a new one based our own policy preferences.

**{¶ 36}** CGMI and the city cite *Carter v. Ohio Dept. of Health*, 28 Ohio St.3d 463, 504 N.E.2d 1108 (1986), in support of their position. In *Carter*, the court upheld the abolishment of civil-service positions in connection with the outsourcing of particular data-entry work. The statute at issue permitted the permanent deletion of such positions for, among other reasons, "reasons of economy," and the court held that that provision authorized the agency's action. *Id*. at 464. *Carter* is inapposite because the statute by its terms provided for deletion based on reasons of economy, leaving the court to perform its usual role of construing and applying the statutory terms.

**{¶ 37}** By contrast, the terse language of the statute before us exempts from sales and use taxation "[s]ales to the state or any of its political subdivisions." CGMI is neither the state nor a subdivision. Given the well-settled rule that tax exemptions "must be construed *strictly against* the taxpayer" (emphasis sic), *H.R. Options, Inc. v. Wilkins*, 102 Ohio St.3d 1214, 2004-Ohio-2085, 807 N.E.2d 363, ¶ 2, and that " '[i]n all doubtful cases exemption is denied,' " *A. Schulman, Inc. v. Levin*, 116 Ohio St.3d 105, 2007-Ohio-5585, 876 N.E.2d 928, ¶ 7, quoting *Youngstown Metro. Hous. Auth. v. Evatt*, 143 Ohio St.

268, 273, 55 N.E.2d 122 (1944), we are not free to indulge in expanding the statute in order to promote managed competition.

**{¶ 38}** We hold that CGMI cannot qualify for the exemption apart from establishing a status as an actual purchasing agent of the city. Consistent with that legal precept, the BTA reasonably and lawfully upheld the commissioner's denial of the exemption on the present record.

### IV. Conclusion

**{¶ 39}** For the foregoing reasons, the BTA acted reasonably and lawfully when it upheld the tax commissioner's use-tax assessment against CGMI. We therefore affirm the decision of the BTA, and we deny as moot the commissioner's motion to dismiss the city.

Decision affirmed.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

John P. Curp, Cincinnati City Solicitor, and Terrance A. Nestor, Assistant Solicitor, for appellants.

Michael DeWine, Attorney General, and Daniel W. Fausey, Assistant Attorney General, for appellant.

_____